A11A0382. CALDON v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA.
(715 SE2d 487)

DOYLE, Judge.

Elizabeth Denise Caldon, formerly employed at Macon State College, appeals from the trial court's grant of summary judgment to the Board of Regents of the University System of Georgia ("the Board") as to Caldon's claim that she was unlawfully discharged in violation of the Georgia Whistleblower Act, OCGA § 45-1-4. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

Viewed in this light, the record shows that Caldon worked as an

---

[1] (Punctuation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

administrative assistant in the office of the President of Macon State College from 1993 until 1997 and worked directly for President David A. Bell from 1997 to 2008. In addition to other duties, Caldon prepared Bell's monthly leave reports,[2] which Bell later reviewed and signed. Caldon deposed that in 2006 she began discussing with Bell her concerns that he was under-reporting his use of leave. In July 2008, the Board issued a publication discussing leave reports, and Caldon expressed to Bell that she understood the Board policies to require him to account for more leave taken in his reports than he included. Caldon deposed that Bell's under-reporting of leave time for July 2008 was so egregious that she declined to complete his leave form for August 2008. On September 15, 2008, Caldon attached a note to Bell's August 2008 leave form, stating "With your medical and personal leaves, and the stricter auditing guidelines, I feel it more appropriate for you to complete your personal leave reports"; Bell recalled receiving the note and that Caldon had objections to his leave reports. In support of her claim that she was engaged in whistleblowing activity, Caldon pointed to Bell's leave reports from the months before and after her termination, which show that Bell reported a greater amount of leave after her September 15 note.

In addition to leave reporting, Caldon deposed that she engaged in other activity, which she contended should be considered whistle-blowing activity, including: (1) reporting in July 2008 a conflict of interest between Bell and his personal financial advisor, Jimmy Patton, who as the chair of the Macon State College Foundation was in a position to vote on Bell's compensation, which report led to Patton's recusal from Foundation business related to Bell's compensation; (2) as late as August 28, 2008, reporting Bell's practice of registering for but not attending various professional functions, which were paid for using state money; and (3) voicing concerns related to Bell's mental ability to handle his job responsibilities to Vice President Levy Youmans, who in August 2007, asked Caldon to limit Bell's participation in meetings.

Although Bell gave Caldon good ratings on annual performance reviews through 2008, Bell received complaints about Caldon's interactions with him and others, including from Youmans, Vice President Barbara Frizzell, and former Chief of Staff Larry Stinson.

In June 2008, John Cole replaced the retiring Stinson, and Cole deposed that on September 23, he advised Bell to terminate Caldon after learning that she verbally reproached Bell in front of other employees. Nevertheless, Bell decided to give Caldon "the benefit of the doubt."

---

[2] It is undisputed that Bell was required to account for leave time.

On September 24, 2008, Caldon was involved in another verbal exchange with Bell in which she discussed Bell's handling of a personal family matter between him and his son, Thomas. Caldon deposed that Thomas called, and while she was on the phone with him, Bell approached her. Caldon deposed that Bell stated, "I don't speak to my son at the office. Tell [him] [a]dios," and laughed. Caldon deposed that because she feared Thomas had overheard Bell's statement, her response was, "That wasn't necessary. [Thomas] just wanted to give you an idea about an appointment on Monday"; she denied that she raised her voice to Bell. Letitia Langley, a secretary in the office, deposed that she heard Caldon say to Bell, "I will not tolerate that" and "[h]e is your son," and Langley was shocked that Caldon made such statements to Bell. Cole was also present and overheard the exchange and considered Caldon to be "yell[ing] at" and "berating" Bell. Caldon later sent an e-mail to Cole, which said:

> My apologies for my remarks a few moments ago, but you have no idea of the behavior that I have witnessed for years by Dr. Bell towards his own son (and so many others that I will not discuss). Dr. Bell's own wife has refused to even see him—or allow him in their home—since 2006 (according to Thomas).
>
> He is right—*this is none of my business.* However, his son has called me at home in tears more times than I can remember. As a Christian, I have to accept his calls and simply listen. *That is all that I do—listen.*
>
> Thomas simply wanted to give his Father a message this morning about a prostate doctor's appointment—*nothing more*—and Dr. Bell's "smirk" and total indifference simply caught me off guard. I should be used to it by now; however, it is hard to leave my Christian values at the door when I enter my office each morning (as Dr. Bell has demanded in so many words for years).
>
> The only thing I know to do now is to continue praying for him and his family.[3]

Thereafter, while Cole and Bell were in Bell's office, Cole counseled Bell to terminate Caldon, explaining that it was inappropriate for Caldon to speak to Bell in that manner and that it affected his office and the college. Bell agreed with Cole, and the two discussed Caldon's termination. Bell spoke to Youmans and Frizzell

---

[3] (Emphasis in original.)

on the afternoon of September 24 to explain his decision to terminate Caldon and confirm their agreement with the decision. Bell offered to allow Caldon to resign her position or be terminated; Caldon initially chose to resign, but subsequently withdrew her resignation and filed for a review of her termination.[4]

Thereafter, Caldon filed suit alleging that the Board had violated the Georgia Whistleblower Act by terminating her employment. The Board moved for summary judgment, contending that Caldon had failed to meet her burden of establishing a prima facie case of retaliation. The trial court agreed with the Board, finding that the undisputed facts established that Caldon engaged in insubordinate behavior toward her supervisor, which she admitted, and was fired immediately thereafter. Based on that fact, the trial court concluded that no jury issue existed on the question of whether Caldon was fired for a retaliatory purpose.

Caldon contends that the trial court erred by granting summary judgment to the Board with regard to her whistleblower claim because there were disputed issues of material fact regarding the reason Bell fired Caldon and that Bell's motivation for Caldon's termination is a jury question. We disagree.

OCGA § 45-1-4 prohibits public employers from (1) retaliating "against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency"; or (2) retaliating "against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation."[5] "The statute gives public employees the right to bring an action in superior court to have the retaliatory action set aside."[6] The statute "applies to the receipt by a public employer from any public employee of complaints or information concerning the possible existence of any activity constituting fraud, waste, and abuse in or relating to any state programs and operations under the

---

[4] The Law and Organization Committee of the Board of Regents affirmed the termination.

[5] OCGA § 45-1-4 (d) (2), (3) (2007).

[6] (Punctuation omitted.) *Jones v. Bd. of Regents of the Univ. Sys. of Ga.*, 262 Ga. App. 75, 80 (4) (585 SE2d 138) (2003). As noted in *Forrester v. Ga. Dept. of Human Svcs.*, Georgia courts "have addressed the issue of summary judgment in the context of whistle-blower claims in very few cases, none of which explicitly sets forth a standard for analyzing when summary judgment is appropriate in such circumstances." 308 Ga. App. 716, 721 (1) (708 SE2d 660) (2011) (physical precedent only) (analyzing the trial court's grant of summary judgment of a claim under OCGA § 45-1-4 (d) pursuant to the burden-shifting analysis utilized in Title VII employment claims as first applied in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802-806 (II) (93 SC 1817, 36 LE2d 668) (1973)).

jurisdiction of such public employer,"[7] and it is undisputed that Caldon was a public employee as defined by the statute.

Pretermitting the issue of whether (a) Caldon's actions regarding Bell's leave reports; (b) Caldon's statements regarding Bell's mental health; (c) Caldon's report of Patton's conflict of interest; and (d) Caldon's report of Bell's use of funds for professional functions constitute whistleblowing activity pursuant to OCGA § 45-1-4, we hold that the trial court correctly granted summary judgment to the Board.

Here, the Board submitted direct evidence that Caldon's termination was based on her insubordinate behavior during her September 24 exchange with Bell.[8] Thus, it was incumbent on Caldon to present evidence to establish the existence of a fact issue, which could establish that this stated legal reason was merely pretext for dismissing her based on her whistleblowing activity.[9] As explained in *Jones*, this evidence may be direct or circumstantial.[10]

> Circumstantial evidence may be sufficient to create a jury issue in the face of direct evidence to the contrary. Where direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.[11]

Caldon contends that the temporal proximity of her reports about Bell's leave use and other issues of waste, the differences in Bell's reported leave before and after the whistleblowing, and Bell's change in behavior and demeanor toward her after she refused to fill out his leave form are sufficient to create a question of fact as to his true motivation for terminating her employment. We disagree that this evidence is sufficient to create a genuine issue of fact.

As an initial matter, Caldon has failed to present any evidence contradicting the occurrence of the September 24 dispute between her and Bell. Although Caldon disputed some of the other witnesses'

---

[7] (Punctuation omitted.) *Jones*, 262 Ga. App. at 80 (4).

[8] See id. at 81 (4).

[9] See id. at 82 (4).

[10] See id. at 81 (4).

[11] Id. at 81 (4). See also *Furlong v. Dyal*, 246 Ga. App. 122, 123-124 (1) (539 SE2d 836) (2000).

testimony regarding the encounter, ultimately, she conceded in her deposition that the event occurred, which is further supported by her e-mail to Cole which she prepared after the September 24 dispute.[12] While we disagree with the trial court's conclusion that an employee is always barred from proving a case of retaliation if she cannot dispute the existence of the employer's proffered reason for termination, in this instance, Caldon has failed to point to any other evidence that would establish a fact question for the employer's motive, such as inconsistencies among Bell's or other Board employees' statements regarding the reason for Caldon's termination, evidence of any statements regarding Bell's view of Caldon's refusal to complete his leave forms, or evidence that similarly situated employees were treated differently after engaging in insubordinate behavior.[13] In some cases, circumstantial evidence such as temporal proximity could be sufficient to establish a question of fact with regard to the stated reason for termination, in this case, however, it is not sufficient to overcome the Board's direct evidence that Caldon was terminated for her insubordination.[14] Other Board employees overheard the exchange between Caldon and Bell, Cole previously recommended that Bell terminate Caldon based on her insubordinate behavior, and Cole continued to recommend terminating her after the September 24 exchange without knowledge of her refusal to complete Bell's time sheets. Accordingly, because Caldon has failed to establish that a genuine issue of material fact existed as to the reason for her termination, we affirm the trial court's grant of summary judgment to the Board.

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 13, 2011 —
RECONSIDERATION DENIED JULY 27, 2011.

*Moorman & Pieschel, Christopher G. Moorman,* for appellant.
*Thurbert E. Baker, Attorney General, Laura W. McDonald, Kathleen T. Gosden, Assistant Attorneys General,* for appellee.

---

[12] Compare with *Jones,* 262 Ga. App. at 82 (4) (explaining that the terminated employee expressly denied the behavior upon which his termination was predicated).

[13] See, e.g., *McNorton v. Ga. Dept. of Transp.,* 619 FSupp.2d 1360, 1380 (B) (2) (N.D. Ga. 2007).

[14] See id. at 1377 (B) (1) (b); *Jones,* 262 Ga. App. at 81 (4).