[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10101
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-03228-WCO

JONATHAN HALL,
JOHN K. JACKSON,

Plaintiffs-Appellants,

versus

DEKALB COUNTY GOVERNMENT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 9, 2013)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Jonathan Hall and John K. Jackson, who are African American, appeal the

district court's grant of summary judgment in favor of the Dekalb County

Government ("the County"), in their *pro se* employment action, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, 2000e-3. On appeal, Hall and Jackson argue that the County: (1) discriminated against them based on their race by denying them access to equipment and benefits that were provided to white employees; (2) retaliated against them for filing discrimination charges with the Equal Employment Opportunity Commission ("EEOC"); and (3) subjected them to a racially hostile work environment. For the reasons set forth below, we affirm the district court's grant of summary judgment to the County.

I.

At the time when they filed the instant complaint, Hall and Jackson were both employed by the County as heating, ventilation, and air conditioning ("HVAC") mechanics. During their employment, George Smith was the Assistant Director of Building and Maintenance Operations, and David Fisher was the Director of Facility Management.

On November 13, 2009, Hall and Jackson filed a joint complaint against the County, alleging violations of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3. Specifically, they challenged "employment transfers, use of company facilities and equipment[], fringe benefits and other terms and condition[s] of employment, [and

2

the County's] acts of harassment and retaliation" based on their race. In support, they each submitted an EEOC complaint that had been filed on August 28, 2007. In those complaints, Hall and Jackson alleged that they had been "subjected to harassment, different terms and conditions of employment, and denied benefits."

In an attachment to their complaint, Hall and Jackson specifically alleged that the County denied them the opportunity to learn and operate its Building Automated Systems ("BAS"), while other white employees, such as Rick Ricker, were allowed unrestricted access to the BAS. After several complaints and grievance meetings, the County permitted Hall and Jackson to learn the BAS with limitations and restrictions. In 2006, Jackson was permitted to perform morning BAS "checks," but later, the County assigned Mike Jackson, a white employee, to perform the checks. Eventually, the County allowed Hall to operate the BAS, but it required him to be accompanied by Ron Pennington, a white employee, "for training purposes." After Hall spent months repairing the BAS and "educating Pennington," the County removed Hall from the BAS assignment, but allowed Pennington to "work freely on the system."

As to employment benefits, Hall and Jackson alleged that the County did not allow them to earn the same amount of overtime and "comp time" benefits as Ricker. After several complaints and grievance meetings, Hall and Jackson were

3

allowed to receive some comp time with limitations and restrictions. Finally, Hall and Jackson alleged that the County retaliated against them for filing their EEOC complaints. Specifically, the County removed Jackson from the HVAC "crash team," and Hall was "written up for occurrences that happened three and four weeks prior." Hall and Jackson alleged that the County took these retaliatory actions after receiving their EEOC complaints.

Following discovery, the County filed an amended motion for summary judgment, arguing that the plaintiffs had failed to establish that they had experienced an adverse employment action, as required to set forth a *prima facie* case of discrimination or retaliation under Title VII. Further, as to the race harassment or hostile work environment claim, the allegations in the complaint did not establish the required level of severity or pervasiveness.

In support of its motion for summary judgment, the County submitted a number of exhibits, including depositions of Hall and Jackson, affidavits from Smith and Fisher, work assignment logs, and records of the overtime and comp time benefits that were received by the County's employees from 2006 to 2008.

In their response to the County's motion for summary judgment, Hall and Jackson asserted that Pennington, a white mechanic, referred to Hall as a "boy," and when Hall reported the incident, Smith created "a hostile working

4

environment" by laughing in response. Additionally, they alleged that the County hired an attorney to "tamper with witness testimony" in an effort to discredit Hall's version of the incident. These actions constituted "sufficiently severe or pervasive" harassment to alter the terms and conditions of Hall's and Jackson's employment.

The magistrate judge issued a report and recommendation that the district court grant the County's motion for summary judgment. As to racial discrimination, the magistrate found that, even if Hall and Jackson were denied the opportunity to work or train on the BAS, the denial did not constitute a "materially adverse" employment action. Although the plaintiffs believed that assigning them to work with the BAS would be more efficient and would increase their marketability, Title VII does not require an employer to be efficient or make its employees marketable. Additionally, an alternative conclusion would potentially give rise to a variety of unfair work assignment claims that should not be litigated in federal court. In sum, their lack of access to the BAS did not constitute "a serious and material change in the terms, conditions, or privileges of employment."

Further, the magistrate found that the plaintiffs failed to establish that the denial of overtime or comp time benefits constituted a materially adverse

5

employment action. Hall and Jackson acknowledged that they had consistently earned comp time and overtime while employed with the County, and personnel records showed that they did not receive significantly less comp time or overtime than white employees. Thus, the occasional denial of comp time or overtime did not constitute an adverse employment action. Because they did not experience a materially adverse employment action, Hall and Jackson failed to establish a *prima facie* case of race discrimination.

As to retaliation, the magistrate found that Jackson's reassignment from the crash team to the preventative maintenance team ("PM team") did not constitute an adverse employment action because his preventative maintenance duties were within his responsibilities as an HVAC mechanic, and the reassignment did not result in a reduction in pay or any changes in work hours or benefits. As to Hall's retaliation claims, his October 2007 counseling letter did not constitute an adverse employment action because the letter did not result in a reduction in salary, work hours, or responsibilities. As to Hall's 2008 suspension, he established a materially adverse employment action, but he failed to show a causal connection between the 2008 suspension and his EEOC charge, which was filed a year earlier.

Finally, as to Hall's claim of racial harassment, the magistrate found that he failed to establish a *prima facie* case of a racially hostile work environment.

6

Hall's reliance on the incident, during which another employee called him a "boy," could not form the basis of a claim for racially hostile work environment because it occurred in December 2009, more than a month after he filed the instant complaint. Even considering this slur, the single incident, while improper, does not rise to the level of severity or pervasiveness necessary to raise a Title VII racial harassment claim. For these reasons, the magistrate recommended that the court grant the County's motion for summary judgment.

Hall and Jackson objected to the magistrate's report, reasserting their prior arguments. Additionally, as to the racial harassment claim, Hall referenced: (1) the "Pennington 'Boy' incident" that occurred on December 16, 2009, (2) a termination letter for Hall that Fisher drafted the day before the incident; and (3) the County's action in hiring an attorney, who created a fraudulent report regarding Hall's and Jackson's Title VII claims.

After the County's response, the district court adopted the magistrate's report and recommendation. The court noted that Hall and Jackson had not sought permission to supplement their complaint to add allegations regarding the 2009 termination letter or the attorney's investigation. Moreover, even considering the additional allegations, Hall and Jackson failed to establish a *prima facie* case of retaliation or a racially hostile work environment. Hall and Jackson repeatedly

7

argued that evidence would show that they were subjected to discrimination and retaliation, but their conclusory allegations were insufficient to establish a genuine dispute as to any material fact.  Based on these findings, the district court granted the County's motion for summary judgment.

## II.

We review a district court's grant of summary judgment *de novo*, "applying the same legal standards as the district court." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*).  "[S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact." *Id.* (quotation omitted).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Id.* (quotation omitted).  In making this determination, we "make all reasonable inferences in favor of the" nonmoving party. *Id.* (quotation omitted).  Moreover, mere conclusions, unsupported factual allegations, and statements that are based on belief, as opposed to personal knowledge, are insufficient to overcome a summary judgment motion. *Ellis v. England*, 432 F.3d 1321, 1326-27 (11th Cir. 2005).  In general, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will be liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.

1998).

As a preliminary matter, Hall and Jackson raise issues and discuss facts on appeal that (1) are irrelevant to their Title VII claims, or (2) were not presented to the district court. For example, they allege numerous incidents of misconduct by various coworkers, and they assert that the County failed to discipline "similar non-protected employees" for "constant violations" of the County's policies. Further, they allege that the County discriminated against Hall by failing to promote him or accommodate his knee injury.

We generally will not consider on appeal issues which a party failed to raise before the district court. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). To properly preserve an issue for appeal, a party must first clearly present it to the district court in such a way as to afford the district court an opportunity to recognize and rule on it. *United States v. Land, Winston Cnty.*, 163 F.3d 1295, 1302 (11th Cir. 1998). To the extent that Hall and Jackson raise issues that were not clearly presented to the district court, we do not address those issues.

Additionally, Hall and Jackson raise arguments related to incidents that occurred after they filed the instant Title VII action on November 13, 2009. Specifically, they allege that on December 16, 2009, Pennington, a white

9

coworker, referred to Hall by using a racial slur, when he called him "boy." Further, they allege that the County hired an attorney to investigate their racial discrimination claims and that the attorney produced a fraudulent report. Finally, they assert that, on December 15, 2009, Fisher drafted a letter terminating Hall, which was later withdrawn, for the purpose of intimidating Hall.

At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). A plaintiff may not amend his complaint through argument in a brief opposing summary judgment. *Id.*

As noted by the district court, Hall and Jackson never filed a Rule 15(a) motion to amend their complaint to include allegations regarding the December 2009 incidents. Instead, they asserted these claims in response to the County's motion for summary judgment and in their objections to the magistrate's report. As such, these claims were not properly before the district court. *Gilmour*, 382 F.3d at 1315. Regardless, the claims were insufficient to survive summary judgment. As discussed below, the district court properly determined that a single racial slur does not establish a racially hostile work environment. Further, Hall's and Jackson's claims regarding the attorney's allegedly fraudulent investigation

10

are unsupported by any evidence, and appear to be based solely on their subjective beliefs.  As such, those claims are also insufficient to survive summary judgment.  *See Ellis*, 432 F.3d at 1326-27.  Finally, even if Fisher drafted a termination letter in December 2009, Hall concedes that the letter was later withdrawn.

### III.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  As to any Title VII claim, the plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence.  *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008).  When a claim is supported by circumstantial evidence, the district court analyzes the case using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a *prima facie* case of disparate treatment by showing that: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do the job.  *McCann v. Tillman*, 526 F.3d 1370, 1373

11

(11th Cir.2008). If the plaintiff presents a *prima facie* case, the employer must offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination. *Id.*

To qualify as an adverse employment action, an employer's action that falls short of an ultimate employment decision, "must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Crawford*, 529 F.3d at 970 (alterations omitted). Specifically, a Title VII claim requires the employee to establish that he experienced "a *serious* and *material* change in the terms, conditions, or privileges of employment." *Id.* at 970-71. Although Title VII does not require proof of direct economic consequences, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment as "viewed by a reasonable person in the circumstances," regardless of the employee's subjective view. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).

Federal courts do not sit as "super-personnel department[s]" that reexamine an employer's business decisions. *Id.* at 1244. "Work assignment claims strike at the very heart of an employer's business judgment and expertise because they

12

challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.* As such, applying the adverse action requirement is "especially important" when a claim is predicated on an employee's disagreement with his employer's reassignment of job tasks. *Id.* In the majority of instances, an employee alleging a change in work assignments, without any tangible harm, will be outside the protection provided by Title VII's anti-discrimination clause. *Id.* at 1244-45 (rejecting an employee's claim that a change in his work assignments, resulting in a "loss of prestige," constituted a materially adverse employment action).

To show pretext, the plaintiff must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Wascura v. City of South Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001). A reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

As an initial matter, it is undisputed that Hall and Jackson, who are African American, are members of a protected class, and that they are qualified for their positions as HVAC mechanics. Thus, the only issues in determining whether they

13

have established a *prima facie* case of race discrimination are whether they experienced an adverse employment action and whether similarly situated employees outside their protected class were treated more favorably. *See McCann*, 526 F.3d at 1373.

The district court did not err in concluding that Hall's and Jackson's allegedly limited use of the BAS was not an adverse employment action. They put forth no evidence that any limitations of their ability to train on and use the BAS affected the terms, conditions, or privileges of their employment as HVAC mechanics, or that limited access to the BAS constituted a "serious and material" change in their employment. *See Crawford*, 529 F.3d at 970-71. Notably, it is undisputed that Hall and Jackson were not denied all access to the BAS. In his deposition, Jackson admitted that, prior to transferring to the PM team, he was permitted to use the BAS with limitations, and he testified that, during his time working for the County, he had never experienced a reduction in pay or any change in his work hours or benefits. As to the benefits of using the BAS, Hall asserted that additional experience with the BAS would make him more marketable as a mechanic. However, he also asserted that he was certified to operate the BAS, he trained another employee on the system, and he was more skilled at using the BAS than other employees. Further, Hall and Jackson both

14

testified that working with the BAS was not required for HVAC mechanics.  As to the County's process for assigning work, Smith stated in his affidavit that work assignments were based on the County's daily needs, and as such, no employee could consistently receive the same assignment.  Even if Hall's and Jackson's use of the BAS was more limited than other employees, they failed to demonstrate any tangible harm resulting from these limitations, and we will not reexamine the County's business decisions regarding how to allocate its resources in assigning work.  *See Davis*, 245 F.3d at 1244-45.

The district court also did not err in finding that Hall and Jackson failed to establish that a limitation on their overtime and comp time benefits was an adverse employment action, and regardless, they failed to show that similarly situated white employees were treated more favorably.  Because overtime and comp time opportunities affected compensation, a denial of such opportunities could constitute an adverse action.  *See Crawford*, 529 F.3d at 970.  However, it is undisputed that Hall and Jackson received these benefits throughout their employment with the County.  To support their race discrimination claim, they alleged that they received less overtime and comp time benefits than Ricker, a white HVAC mechanic.  In his affidavit, Smith conceded that, in 2006 and 2007, Ricker earned more comp time than Hall and Jackson.  However, even though

15

Ricker earned more comp time during these two years, the evidence did not support Hall's and Jackson's claim that they were treated less favorably than white employees.

To the contrary, Smith submitted personnel records showing that, in several instances, Jackson and Hall earned more benefits than white HVAC mechanics. For example, in 2006, Jackson earned 57 hours of overtime and 44.75 hours of comp time, while Ricker earned only 4.75 hours of overtime and Mike Jackson, a white HVAC mechanic, earned only 17.75 hours of overtime and no comp time. Further, in 2007, Hall earned 54.75 hours of comp time and Jackson earned 89.25 hours of comp time, while Pennington, a white HVAC mechanic, earned no comp time. Additionally, in 2008, Hall earned more comp time than both Ricker and Mike Jackson. Accordingly, the district court properly found that Hall and Jackson consistently received overtime and comp time benefits, and the occasional denial of additional benefits did not constitute a serious and material change in their employment. *Crawford*, 529 F.3d at 970-71. Moreover, they failed to show that white HVAC mechanics were treated more favorably with regard to these benefits. *McCann*, 526 F.3d at 1373.

Finally, as to the County's asserted legitimate, non-discriminatory reason for Ricker's large amount of comp time in 2007, Smith declared that Ricker earned

16

more comp time due to his assistance with an installation project. Hall and Jackson presented no evidence to suggest that the installation project was asserted as pretext for race discrimination. *See Wascura*, 257 F.3d at 1243; *St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2752. In fact, Jackson testified that he did not know of any other employees who received as much comp time as Ricker, which suggests that Ricker also earned more comp time than other white employees. Accordingly, the district court properly granted summary judgment to the County as to Hall's and Jackson's race discrimination claim.

## IV.

To establish a claim of retaliation under Title VII, a plaintiff mUST prove that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008); 42 U.S.C. § 2000e. In a retaliation case, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). The acts must be significant and not trivial. *Id.*

A plaintiff may satisfy the causation element by showing that the protected

activity and the adverse action were not "completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). A plaintiff can establish causation by showing a close temporal proximity between the statutorily protected activity and the adverse action, "[b]ut mere temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). (quotation omitted). Accordingly, when a plaintiff relies on temporal proximity alone to show causation, "if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* A three to fourth month gap is insufficiently proximate to establish causation. *Id.*

Finally, under the *McDonnell Douglas* framework, if a plaintiff employee makes out a *prima facie* case of retaliation, and the employer articulates a legitimate, non-discriminatory reason for the action, the plaintiff must then show, by a preponderance of the evidence, that the reason is pretextual. *Crawford*, 529 F.3d at 976 (citation and quotation marks omitted). "The plaintiff must meet the reason proffered [by his employer] head on and rebut it." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citation omitted).

The district court did not err in finding that Hall and Jackson failed to establish a *prima facie* case of retaliation. Specifically, Hall's written counseling,

18

in October 2007, was not materially adverse because he failed to allege that it had any significant impact on his employment. According to Hall, he received the written counseling for working with Jackson, even though he had been given permission to do so. Although Hall argued that the counseling was unjustified, he failed to explain how it negatively impacted his employment. As such, the counseling was not an action that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington*, 548 U.S. at 68, 126 S.Ct. at 2415. Further, as to Hall's suspension, he failed to establish a causal connection by temporal proximity because there was a substantial delay between the EEOC complaint, in August 2007, and Hall's suspension a year later, in September 2008. *See Thomas*, 506 F.3d at 1364. Further, he failed to point to any other evidence to suggest that his suspension was based on the EEOC complaint.

Finally, Jackson's reassignment to the PM team in November 2007 did not constitute an adverse employment action. In his deposition, Jackson testified that the County's asserted reason for the transfer was that he did not have a "warm air license." Further, he stated that Mike Jackson, who did not have such a license, was also transferred to the PM team. As to his position as an HVAC mechanic, Jackson noted that his work duties changed daily, and he never received a reduction in pay or a change in his work hours or benefits. Accordingly, Jackson

19

failed to present any evidence to suggest that his reassignment to the PM team, as opposed to the crash team, negatively and materially impacted the conditions of his employment. Thus, the reassignment was not an action that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington*, 548 U.S. at 68, 126 S.Ct. at 2415.

Regardless, even if the reassignment constituted a materially adverse employment action, the County asserted that Jackson was reassigned because he lacked a certain commercial licence, and he failed to directly rebut this legitimate, non-discriminatory reason. *See Crawford*, 482 F.3d at 1308. In fact, Jackson conceded that he was transferred along with another employee, Mike Jackson, who also lacked the same license. He now alleges that another mechanic, who lacked a license, was not transferred. However, he failed to raise this claim before the district court, and in any event, unsupported factual allegations are insufficient to survive summary judgment. *See Access Now*, 385 F.3d at 1331; *Ellis*, 432 F.3d at 1326-27. Accordingly, the district court properly granted summary judgment as to Hall's and Jackson's retaliation claims.

## V.

Title VII prohibits a racially hostile work environment where "a series of separate acts . . . collectively constitute one 'unlawful employment practice.'"

20

*McCann*, 526 F.3d at 1378.  To establish a hostile work environment claim, an employee must show, among other things, that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  Further, "Title VII is only implicated in the case of a workplace that is permeated with discriminatory intimidation, ridicule and insult, not where there is the mere utterance of an epithet."  *Id.* at 1276-77 (quotations and alteration omitted).  In *McCann*, we found that a black employee's allegations that a white employee called her "girl" and two male black employees "boys," and that another coworker referred to a former black employee as a "nigger bitch" did not amount to severe or pervasive harassment.  *McCann*, 526 F.3d at 1378-79.  We stated that "[a]lthough offensive, such instances of racially derogatory language alone, extending over a period of more than two years, [were] too sporadic and isolated to establish that her employers' conduct was so objectively severe and pervasive as to alter the terms and conditions of her employment." *Id.* at 1379.

The district court did not err in finding that Hall and Jackson failed to establish a hostile work environment or racial harassment claim.  Their complaint failed to allege a single specific instance of racially harassing conduct in the

21

workplace.  Moreover, even considering Pennington's racial slur, which was not alleged in the complaint, Hall's allegations reference "the mere utterance of an epithet," not a workplace that was permeated with discriminatory intimidation. *See Miller*, 277 F.3d at 1276-77.  Although Hall and Jackson allege that they were subjected to years of daily harassment, they fail to provide any specific examples of racial harassment to support their claim.  Their conclusory, unsupported allegations are insufficient to survive a motion for summary judgment.  *See Ellis*, 432 F.3d at 1326-27.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the County.

**AFFIRMED.**