**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 31, 2013**

# In the Court of Appeals of Georgia

A13A1289. FREEMAN et al. v. SMITH.
A13A1290. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA v. SMITH.
A13A1291. SMITH v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al.

MCFADDEN, Judge.

Cassandra Smith, a former administrative employee at Albany State University, sued Everette Freeman and Abiodun Ojemakinde – respectively, the University's President and Vice President for Academic Affairs – for violating her constitutional and statutory rights. She argued, among other things, that they fired her without due process of law. She also sued the Board of Regents of the University System of Georgia, alleging, among other things, that her termination was in retaliation for her role as a whistleblower and that the Board of Regents breached her employment contract. The defendants and Smith appeal the denial of their motions for summary

judgment. We hold that because Smith has not presented evidence of a causal connection between her disclosures and any materially adverse action, the Board of Regents is entitled to summary judgment on the whistleblower claim. We also hold that Smith was an employee at will, so her termination did not breach the alleged employment contract and the Board of Regents is entitled to summary judgment on that claim. Moreover, as an employee at will, Smith had no property interest in her job so all of the defendants are entitled to summary judgment on her claims for due process violations. Accordingly, we reverse the denial of the defendants' motion for summary judgment and affirm the denial of Smith's motion for summary judgment.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Caldon v. Bd. of Regents of the Univ. System of Georgia*, 311 Ga. App. 155 (715 SE2d 487) (2011) (citation omitted). "To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim." *Jones v. Bd. of Regents of the Univ. System of Georgia*, 262 Ga. App. 75, 76 (2003). "A de novo standard of review applies to an appeal from a [ruling on] summary judgment, and we view the evidence,

and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Caldon*, 311 Ga. App. at 155. (citation omitted).

Viewed in this light, the record shows that in April 2009, Freeman hired Smith to be the Interim Associate Vice President for Research and Sponsored Programs. In October 2009, he sent her a letter offering her the job on a non-interim basis, and she accepted. The appointment letter stated that Smith would hold her administrative position "at the pleasure of the President, and it is subject to annual renewals."

Ojemakinde, who apparently was Smith's direct supervisor, grew disenchanted with her performance throughout 2010. He sent her to a leadership training center, but was unhappy with the results. In February 2011, Freeman and Ojemakinde gave Smith a performance improvement plan with specific goals developed with her input. In March, Ojemakinde gave her an unfavorable annual performance evaluation.

On May 5, 2011, Smith asked for an emergency meeting with Freeman to discuss alleged violations of the law regarding certain federal grants. At the meeting on May 12, 2011, Freeman believed that Smith said she could no longer work with Ojemakinde. Freeman asked her to resign. When she refused, she was fired.

Smith asked Freeman to reconsider the decision, but he declined. Smith then appealed to the Board of Regents, which likewise affirmed. Smith was never given a hearing.

Smith sued the Board of Regents, Freeman, and Ojemakinde. She claimed that the individual defendants violated her due process rights by firing her without a hearing and without first employing progressive discipline practices. Against the Board of Regents, Smith asserted not only that her due process rights were violated, but also that the Board of Regents breached her employment contract and that she was fired in retaliation for being a whistleblower. The parties moved for summary judgment. The trial court denied the motions, but certified its order denying Freeman and Ojemakinde's motion for immediate review. After Freeman and Ojemakinde filed their appeal, Smith and the Board of Regents filed cross-appeals from the denial of their motions for summary judgment.

1. *The Board of Regents was entitled to summary judgment on Smith's whistleblower retaliation claim.*

OCGA § 45-1-4 (d) (2) prohibits public employers from retaliating "against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was

4

made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." The Board of Regents argues that it is entitled to summary judgment on Smith's whistleblower retaliation claim because, among other things, Smith has not shown a causal connection between her disclosures and any materially adverse employment action. We agree.

The parties assume that in analyzing Smith's whistleblower claim, we would follow the burden-shifting framework as set forth in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792 (93 SCt 1817, 36 LEd2d 668) (1973), and approved in the physical precedent *Forrester v. Ga. Dept. of Human Svcs.*, 308 Ga. App. 716, 722 (1) (708 SE2d 660) (2011) (physical precedent) (cert. denied). Although many courts have followed the *McDonnell Douglas* framework when analyzing retaliation claims based on circumstantial evidence, not all have done so. See, e.g., *Ramirez v. Bausch & Lomb*, 2013 U.S. App. LEXIS 21371 at *3 (11th Cir. Fla. Oct. 22, 2013) ("Where there is no controlling state law, [Florida Whistleblower Act] claims are analyzed under the Title VII retaliation framework. For retaliation claims based on circumstantial evidence, we apply the burden-shifting analysis established in *McDonnell Douglas . . . .*") (citation omitted); *Hicks v. Baines*, 593 F3d 159, 164 (2d Cir. 2010) ("Retaliation claims under Title VII are evaluated under a three-step

5

burden-shifting analysis.") (citation omitted); *Bishop v. Bell Atl. Corp.*, 299 F3d 53, 58 (1st Cir. 2002) (following *McDonnell Douglas* framework to analyze a claim with no direct evidence of retaliation under Maine's whistleblower statute). Compare *Gordon v. Fedex Freight*, 674 F3d 769, 774 (7th Cir. Ill. 2012) ("In resolving retaliatory discharge claims, Illinois does not apply the *McDonnell Douglas* burden-shifting framework commonly applied in federal retaliation cases."). Courts have observed that "one of the difficulties with applying the *McDonnell Douglas* framework at the summary judgment stage is that it invites trial judges to weigh evidence and assess the credibility of witnesses." *Eastridge v. Rhode Island College*, 996 FSupp 161 (D.R.I. 1998) (discrimination case) (citation and punctuation omitted).

We are not required to decide whether the *McDonnell Douglas* framework should be adopted in whistleblower retaliation cases because, under any standard, Smith has not pointed to record evidence that any materially adverse employment action was a matter of retaliation for her whistle-blowing activity. *Jones v. Bd. of Regents of the Univ. Sys. of Georgia*, 262 Ga. App. 75, 81 (4) (585 SE2d 138) (2003) (because the only direct evidence of record was that plaintiff was terminated for a legitimate reason, "[i]n order to avoid summary judgment, [he had to] show that the

6

record provide[d] circumstantial evidence that his termination was a matter of reprisal."). See *Caldon v. Bd. of Regents of the Univ. System of Georgia*, 311 Ga. App. 155, 158-159 & n.6 (715 SE2d 487) (2011) (acknowledging but not expressly adopting *Forrester's* analysis under the *McDonnell Douglas* burden-shifting framework of the grant of summary judgment on a whistleblower claim).

Smith alleged that she disclosed four violations of federal law or regulations. First, she alleged that at an unspecified time, she relayed to Freeman and Ojemakinde a complaint by Taryn Thomas, who was employed in the federally-funded Health Careers Opportunity Program, that Thomas had been required to perform numerous responsibilities that the grant specified other people were to perform. This violated OMB Circular A-110. (Smith does not describe what OMB Circular A-110 is, but presumably it is some sort of federal regulation.) The problem occurred prior to Smith's arrival at Albany State. When Smith did not get a response, she relayed her concern to the Board of Regents, which could not substantiate the allegations.

Second, Smith alleged that on multiple occasions, beginning in February 15, 2010, she reported to Freeman, Ojemakinde and others the misuse of funds in the federally-funded NASA Science Engineering Mathematics Aerospace Academy, in violation of federal budgeting rules. She reported that before she started at Albany

State, Granville Wrensford and Elizabeth Lovett had subcontracted the position of "family café coordinator," a "key" position under federal regulations, to a person named Verda Parker even though the grant application, which was approved by the funding agency, specified that Elizabeth Lovett would hold the position. Smith also informed the Board of Regents, which could not substantiate the allegations.

Third, Smith alleged that in September 2010, she informed Freeman, Ojemakinde, and Connie Leggett that the staff involved in the federally-funded DNA Ancestry Project had conducted human subject research without obtaining prior approval from the Institutional Review Board, of which Smith was the chair. The inside of the cheeks of the students participating in the project were swabbed to obtain DNA. Smith told Leggett and Freeman that the faculty, staff and students were required by the Code of Federal Regulations to complete HIPPA/Human Subjects training. She also informed them that the research violated the University System of Georgia Internal Audit and Compliance Code of Conduct. Once the project did come before the Institutional Review Board, the board members concluded that there had been research misconduct and identified a number of safeguards that should have been implemented.

Fourth, Smith alleged that in September 2010, she complained to Freeman and Ojemakinde about the lack of reporting for the federally-funded Center for Advanced Logistics Management or "CALM" Program. She had not been informed of this program and only learned of its existence when a faculty member expressed interest in becoming involved. Smith raised her concerns about the lack of reporting on the program to university counsel, who told her it was an appropriation, not a grant, and therefore not subject to the federal reporting requirements. Smith also notified Freeman and Ojemakinde, and eventually the Board of Regents.

We hold that, assuming these disclosures fall within the ambit of the whistleblower statute and were protected disclosures, the Board of Regents is nonetheless entitled to summary judgment because Smith has not pointed to evidence of a causal connection between the disclosures and any adverse employment action. Because there are few decisions from Georgia courts interpreting the causal connection element of a whistleblower retaliation claim, we look to federal decisions for guidance. *Dee v. Sweet*, 268 Ga. 346, 350 (2) (489 SE2d 823) (1997). The "causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F3d 1262, 1266 (II) (A) (11th Cir. 2001).

9

(Although *Pennington* is a Title VII case, the Eleventh Circuit cited it in *Yarcheski v. Keiser School, Inc.*, 508 Fed. Appx. 916 (11th Cir. 2013), a whistleblower case, in relation to the casual connection element, and the Title VII analytical framework is often employed in whistleblower cases. See, e.g, *Forrester*, 308 Ga. App. at 722 (1)). "A plaintiff satisfies this element if she provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Higdon v. Jackson*, 393 F3d 1211, 1220 (11th Cir. 2004) (citations and punctuation omitted). But "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case . . . must be *very close.*" *Clark County School Dist. v. Breeden*, 532 U. S. 268, 273 (121 SCt 1508, 149 LE2d 509) (2001) (emphasis added; citation and punctuation omitted). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F3d 1248, 1253 (1) (10th Cir. 2001). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon*, 393 F3d at 1220. "A three to four month disparity

between the statutorily protected expression and the adverse employment action is not enough." *Thomas v. Cooper Lighting, Inc.*, 506 F3d 1361, 1364 (11th Cir. 2007) (holding that three- month period between plaintiff's April 2005 complaints of sexual harassment and the termination of her employment in July 2005, "without more, does not rise to the level of 'very close.'"). See also *Higdon*, 393 F3d at 1220 (three-month period between the protected expression and the adverse action, with no additional evidence, presents no evidence of causation); *Richmond v. ONEOK, Inc.*, 120 F3d 205, 209 (10th Cir. 1997) (three-month period insufficient). Compare *Jones*, 262 Ga. App. at 81 (4) (2003) (six-week period sufficient); *Donnellon v. Fruehauf Corp.*, 794 F2d 598, 601 (11th Cir. 1996) (one-month period sufficient).

The only evidence Smith has presented of a causal connection is the temporal proximity between her disclosures and the materially adverse employment actions. But, as detailed below, the only actions that occurred less than three months after the disclosures were not materially adverse. And, as for one of them, Smith does not even allege that the person who took the action knew of Smith's protected disclosures. All other allegedly retaliatory action exceeded the protected disclosures by three months or more. Smith therefore has not presented evidence sufficient to create a question of fact on the issue of causation.

11

Smith described in her deposition and affidavit several occurrences that she argues constitute retaliatory action. The first allegedly retaliatory action took place on September 21, 2010, in the same month that Smith had complained about the DNA Ancestry Project and the CALM Project. That day, she received a call from someone named Sandra Yates, who informed Smith that, according to Yates' supervisor, an employee in Smith's office would be transferred to another office. The employee was never transferred.

Smith does not allege that Yates or her supervisor knew of Smith's whistle-blowing disclosures. She thus has not shown a causal connection between those disclosures and Yates' incorrectly informing her that an employee would be transferred. See *Forrester*, 308 Ga. App. at 729 (1) (a) (iv) ("with no evidence that the actual decision-maker knew about their disclosures . . . mere guesses and speculation are all that the appellants present in support of a causal connection between these disclosures" and the adverse employment action). Moreover, "[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it might well have dissuaded a reasonable employee from [making the statutorily-protected disclosure]." *Cobb v. City of Roswell*, 2013 U.S. App. LEXIS 16608 at *18 (11th Cir. Aug. 12, 2013) (citing

12

*Burlington Northern & Santa Fe R. Co. v. White*, 548 U. S. 53, 67-68 (126 SCt 2405, 165 LEd2d 345) (2006).) The actionable employer conduct must be "significant," rather than "trivial." *Burlington Northern*, 548 U. S. at 67-68. We conclude that a reasonable employee would not have found this conduct -- incorrectly warning Smith that an employee would be transferred -- to be materially adverse. For these reasons, it is immaterial that this warning occurred in the same month in which Smith relayed her concerns about the DNA Ancestry Project and the CALM Project.

Smith claims that another act of retaliation occurred on October 11, 2010, when the human resources office informed her that her office would no longer be involved in the process of bringing in scientists for interviews for "renewable sustainability positions." Smith "points to nothing in the record that would lead us to believe the [action] would have the kind of material effect that our case law contemplates would constitute an adverse action." *Jackson v. Hall County*, 518 Fed. Appx. 771, 773 (11th Cir. 2013). We conclude that this vague assertion is insufficient to show a materially adverse action. See *Hall v. DeKalb County*, 503 Fed. Appx. 781, 790 (11th Cir. 2013) (plaintiff who failed to explain how allegedly unjustified, retaliatory action negatively impacted his employment failed to show the action might have dissuaded a reasonable

13

worker from making or supporting a charge of discrimination and therefore did not establish a prima facie case).

The only other allegedly retaliatory actions for which Smith provided dates occurred three months or more after the latest of her disclosures in September 2010, and thus do not demonstrate a "very close" temporal proximity between her disclosures and any adverse action. Specifically, Smith alleged that on December 20, 2010, Larry Wakefield, the vice president for fiscal affairs, denied her request to use office funds to hire a webmaster. (Smith does not allege that Wakefield knew of her whistle-blowing disclosures, so like the allegations about Yates, this cannot constitute retaliatory conduct.) Smith alleged that after she requested leave on February 2, February 14, and March 7, 2011, Freeman emailed Ojemakinde, and copied her with the emails asking, "Have we discussed Dr. Smith's performance?" Smith alleged that she was the only middle ranking administrator not invited to certain meetings, but she does not specify the dates. In February 2011, Freeman and Ojemakinde gave Smith a performance improvement plan with specific goals developed with her input. In March, Ojemakinde gave her an unfavorable annual performance evaluation. And on May 19, 2011, she was terminated.

14

Because each alleged materially adverse employment action occurred three months or more after her disclosures, Smith was required to point to other evidence of a causal connection between her disclosures and that materially adverse action. She has not done so, and the Board of Regents is therefore entitled to summary judgment on her whistleblower retaliation claim. *Brown v. Alabama Dept. of Transp.*, 597 F3d 1160, 1182 (11th Cir. 2010) (three-month interval between protected expression and adverse employment action is a substantial delay, and without more evidence of causal connection, complaint of retaliation fails as a matter of law). See also *Edwards v. Gwinnett County School Dist.*, 2013 U.S. Dist. LEXIS 141171 at *17-22 (N.D. Ga. Sept. 30, 2013) (plaintiff only provided evidence of causation, through temporal proximity, for the two adverse actions that the court concluded were not material and significant, so plaintiff did not establish a prima facie case of retaliation).

2. *Assuming that Smith had an employment contract, the contract provided for at-will employment.*

The Board of Regents, Freeman and Ojemakinde argue that Smith did not have an employment contract and that even if she did, her employment was terminable at will. We hold that, assuming Smith had an employment contract, her employment was terminable at will.

15

To establish the existence of a contract, Smith relies on the letter appointing her to the position. That letter, signed by Freeman, provides in pertinent part:

> It is my pleasure to inform you that we are appointing you as Associate Vice President for Research & Sponsored Programs, effective October 1, 2009. Your salary will be at a fiscal rate of $110,000 payable as follows: $80,000 from state funds and $30,000 from ORSP Indirect & Sponsored Funds. In your capacity as Associate Vice President for Research & Sponsored Programs, you are to report directly to the President and the Vice President for Academic Affairs.
>
> Please be informed that you hold your administrative position at the pleasure of the President, and it is subject to annual renewals. Should your administrative position be vacated and, if you are reassigned, your salary may be changed. You are required to attend various University events including but not limited to the annual Faculty Staff Conference held in August and both the Fall and Spring Commencement Exercises.
>
> * * *
>
> Please acknowledge your acceptance of the above appointment and its conditions by signing below and returning this letter to me within seven days.

The Board of Regents, Freeman and Ojemakinde argue that assuming the appointment letter was a contract, it did not establish any reasonable expectation of

continued employment because it specifically stated that Smith served "at the pleasure of the President." Smith apparently argues that the "subject to annual renewals" language established one-year, renewable terms of employment and that she was terminated during the second one-year period.

The construction of a contract "is a question of law that we review de novo and is independent of those rules allocating burdens of proof on motions for summary judgment." *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000) (citation omitted). "[C]ontracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another." *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002) (citation omitted). See also OCGA § 13-2-2 (4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."). "The provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (West 2012).

In construing contracts,

courts should ascertain the parties' intent after considering the whole agreement and interpret each of the provisions so as to harmonize with the others. That is, in construing contracts, it is important to look to the substantial purpose which must be supposed to have influenced the minds of the parties, rather than at the details of making such purpose effectual.

*Friedman v. Friedman*, 259 Ga. 530, 532-533 (3) (384 SE2d 641) (1989) (citations and punctuation omitted), overruled on other grounds in *Duckworth v. State*, 268 Ga. 566 (492 SE2d 201) (1997). "[T]he law requires that in interpreting a contract, we give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." *Whitmire v. Colwell*, 159 Ga. App. 682, 683 (285 SE2d 28) (1981) (Citations and punctuation omitted.) With these principles in mind, we conclude that Smith's employment was terminable at will.

The phrase "at the pleasure of the President" clearly means at-will employment. See *Soloski v. Adams*, 600 FSupp2d 1276, 1319-1320 (N.D. Ga. 2009) (university's administrative employee who served "at the pleasure of the President" was an at-will employee, so university could discharge him with or without cause). See also *Wright v. Gamble*, 136 Ga. 376, 379 (71 SE 795) (1911) (clerk who "held the office at the

18

pleasure of the board . . . was removable at its discretion, without the preferring of charges, notice, or the benefit of a hearing"). Conversely, no provision of the appointment letter establishes a definite, specific term of employment. The letter states that Smith's appointment is effective October 1, 2009, but it does not provide an end date so as to create a specific term of employment. It may be that, in practice, the employment of parties to contracts with such language usually is not ended before one year has passed. Nonetheless, the "at the pleasure" language makes it clear that Freeman retained the right to terminate Smith at any time. To adopt Smith's interpretation of the phrase "subject to annual renewals" as creating a protected term of employment from which she could not be terminated would conflict with the unambiguous language specifying that her employment was at will and would render that provision meaningless, which we will not do. See *Harvey v. J.H. Harvey Co.*, 256 Ga. App. 333, 342 (3) (568 SE2d 553) (2002). The interpretation that gives meaning to both parts of the sentence is that Smith's employment would always be at Freeman's discretion and that he would review her appointment annually.

The case Smith cites, *Spalding v. Southeastern Personnel of Atlanta*, 222 Ga. 339 (149 SE2d 794) (1966), is inapposite. In *Spalding*, the issue was whether a contact was mutual or unilateral. The Supreme Court rejected the argument that the

19

contract was unilateral because it gave "the company, in its sole judgment" the right to terminate, observing that the contract had a term of one year. The opinion did not concern whether the employee's employment was at will.

Smith was an employee at will. Consequently, her termination was not a breach of contract, and the Board of Regents is entitled to summary judgment on her breach of contract claim.

3. *Because Smith's employment was terminable at will, she was not entitled to due process.*

Because Smith served at the pleasure of Freeman, "she was an at-will employee [who] . . . ha[d] no property interest in her job and, therefore, no viable constitutional due process claim." *Bd. of Regents of the Univ. System of Georgia v. Hogan*, 298 Ga. App. 454, 457 (680 SE2d 518) (2009) (citations omitted). See also *Atkinson v. City of Roswell*, 203 Ga. App. 192, 196 (4) (416 SE2d 550) (1992) ("A party is not entitled to procedural due process where the interest which would be impaired by governmental action does not involve that party's protectible interest in life, liberty, or property."). Consequently, the defendants, not Smith, were entitled to summary judgment on the due process claims.

*Judgment affirmed in Case No. A13A1291. Judgment reversed in Case Nos.*

*A13A1289 and A13A1290. Doyle, P. J., and Boggs, J., concur.*