# WHOLE COURT

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 15, 2019**

# In the Court of Appeals of Georgia

A18A1724. FRANKLIN v. PITTS.

BROWN, Judge.

In the second appearance of these parties before this Court, Dedrain Franklin appeals from the trial court's order granting summary judgment in favor of Robert Pitts ("the County"), whom Franklin sued in his official capacity as chairman of the Fulton County Board of Commissioners. In five enumerations of error, Franklin asserts that the trial court erred by failing to find that genuine issues of fact existed with regard to various elements of her claims against the County under the Georgia Whistleblower Act, OCGA § 45-1-4. For the reasons explained below, we find that Franklin cannot establish a genuine issue of material fact with regard to essential elements of her whistleblower claim — adverse employment action and pretext.

"On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Seki v. Groupon, Inc.*, 333 Ga. App. 319 (775 SE2d 776) (2015). The majority of the relevant facts were delineated in our previous opinion, addressing a statute of limitation issue, as follows:

> Viewing the evidence in the light most favorable to the plaintiff, Franklin has been an employee of the County since 2007, working in the health department. In 2011, she became a Financial Systems Coordinator, the duties of which included credentialing medical providers by submitting information to various care management organizations. In that capacity, she collected from providers information about their health status, demographics, and various numerical identifiers. She had additional responsibilities for credit card payment processing that involved handling confidential medical information from patients, including their diagnoses and demographics. In March 2012, Franklin was moved from a private office to a cubicle.
>
> That move triggered a series of complaints by Franklin premised on the notion that working in a cubicle would expose providers' and patients' protected health information to the general public in violation of the law. In March 2012, she expressed concerns to her supervisors that moving to a cubicle could violate the confidentiality requirements of the federal Health Insurance Portability and Accountability Act [HIPAA]. Later that month, she filed an internal written grievance to that effect. In July 2012, the County's grievance review committee sent Franklin a recommended settlement order, approved by the County manager, finding that the health department had not erred in its practices and thus denying Franklin's grievance. The grievance committee recommended that the health department provide a secured office for Franklin or any other employee processing documents containing confidential health information.

2

Franklin contends that she experienced retaliation as a result of her grievance. After she filed her grievance, her credit card processing duties were assigned to another employee, who was moved from a cubicle to an office. Her credentialing duties [also] were assigned to another employee. . . .

Franklin also claims that she experienced other retaliation in her day-to-day interactions with management. She contends she was denied a request to attend a certain training. . . . Franklin notes that she asked to leave work early in December 2012 but that request was denied (although she left work early, anyway, and was not disciplined). She complains that management ignored other leave requests after she filed her grievance, including in early 2013. She points to an April 2014 incident in which management required an original of her absence excuse for some volunteer work, claiming that also was retaliation. Franklin also alleges that management required her to submit documents for jury duty leave that were not required of others, required a doctor's note after she took one day of intermittent FMLA leave, and generally harassed her for an inability to complete her work in a timely manner and made it harder for her to do her job; it is not apparent from the record when those particular events occurred, however.

Franklin also claims that the County retaliated by failing to hire her for two job transfers [promotions] for which she applied. She applied for a program administrator's position in July 2012 and was interviewed in August 2012, but a County official said that she didn't get the job because of her low interview scores. She also applied for a health program manager position but was informed by the County's recruiting division on January 25, 2013, that she had not been selected because she did not meet the minimum requirements for the position. Franklin filed a second grievance that same month, claiming retaliation and seeking transfer out of her department, which was denied in June 2013.

*Franklin v. Eaves*, 337 Ga. App. 292 (787 SE2d 265) (2016) (*Franklin I*).

After this Court reversed the trial court's grant of summary judgment based upon the expiration of the statute of limitation, *Franklin I*, 337 Ga. App. at 299-300 (2), the trial court afforded Franklin additional time for discovery before ruling on the County's motion for summary judgment. In its order, the trial court concluded that Franklin failed to establish a genuine issue of material fact with regard to disclosure of a violation of or noncompliance with HIPAA or a causal link between her alleged protected activity and any adverse employment action. It also concluded that other than her denied promotions, she could not establish that she suffered an adverse employment action, and that with regard to these denied promotions she did not meet her burden of presenting proof to challenge the legitimate, non-retaliatory reason for her failure to receive the promotions.

The Georgia Whistleblower Act precludes a public employer from retaliating against a public employee for disclosing "a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency," or "for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." OCGA § 45-1-4 (d) (2) and (3). Prohibited retaliation includes:

4

the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

OCGA § 45-1-4 (a) (5).

In construing these provisions, we have held that a public employee must establish "that (1) she was employed by a public employer; (2) she made a protected disclosure or objection; (3) she suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action. [Cit.]" *Murray-Obertein v. Ga. Govt. Transparency & Campaign Finance Comm.*, 344 Ga. App. 677, 680-681 (812 SE2d 28) (2018). When analyzing claims brought under the Georgia Whistleblower Act, we apply the same burden-shifting analysis established by the United State Supreme Court for retaliation cases brought under Title VII of the Civil Rights Act of 1964. See *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802-803 (II) (93 SCt 1817, 36 LE2d 668) (1973);

*Tuohy v. City of Atlanta*, 331 Ga. App. 846, 848-850 (1) (771 SE2d 501) (2015).[1]

Under this framework,

> the plaintiff must first make a prima facie case of retaliation. If the plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. If the employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that each proffered reason was pretext.

(Citation, punctuation and footnote omitted.) *Harris v. City of Atlanta*, 345 Ga. App. 375, 377 (813 SE2d 420) (2018).

On appeal, Franklin contends that the trial court erred by requiring her to prove an actual violation of HIPAA as opposed to reasonable cause to believe that Fulton County violated or failed to comply with HIPAA or Fulton County regulations. See OCGA § 45-1-4 (d) (3). She also contends that the trial court erred by failing to conclude that all of her claims of retaliation constituted adverse employment action, that there was a causal relation between her protected activity and the adverse employment action, and that the County's proffered explanations for the adverse

---

[1] In our application of this analysis, we have previously found Eleventh Circuit decisions persuasive. *Tuohy*, 331 Ga. App. at 851 (3) (a), n.6.

6

employment action were pretextual. We begin our analysis with the adverse employment action element of Franklin's claim.

1. *Adverse Employment Action*. While Franklin contends that the trial court erred by concluding that she did not suffer from adverse employment action, the record shows that the trial court characterized the denial of two specific job opportunities as denied promotions sufficient to establish a prima facie case of an adverse employment action.[2] We will therefore only consider whether the following constituted adverse employment action: delaying a request to attend a training session; change of job duties from credentialing providers and credit card processing to electronic funds transfer duties; denial of leave requests and requests for documentation of leave; and the denial of a third alleged transfer opportunity.[3]

(a) *Freeman v. Smith*. Our research has revealed only one Georgia decision addressing the standard for determining whether a public employee has met her burden of proving "adverse employment action" under the Georgia Whistleblower

---

[2] Based upon our holding in Division 2, we need not address this portion of the trial court's ruling and can assume, without deciding, that the denied promotions constitute adverse employment action.

[3] With regard to the last transfer opportunity, Franklin submitted no evidence showing that the County denied her a specific transfer opportunity.

Act. In *Freeman v. Smith*, 324 Ga. App. 426 (750 SE2d 739) (2013), this Court addressed the validity of an administrative employee's claim that she suffered multiple instances of retaliation for her role as a whistleblower. Id. at 432 (1). We first addressed whether this Court should apply the burden-shifting framework of *McDonnell Douglas*, supra. We noted that not all jurisdictions had accepted this framework, as well as difficulties inherent in its application, before concluding that "[w]e are not required to decide[4] whether the *McDonnell Douglas* framework should be adopted in whistleblower retaliation cases because, under any standard, [the plaintiff] has not pointed to record evidence that any materially adverse employment action was a matter of retaliation for her whistle-blowing activity." Id. at 429 (1).

After so stating, we outlined four occasions on which the plaintiff claimed she made protected disclosures under the Georgia Whistleblower Act. We then addressed the causation element, stating, "the only evidence [the plaintiff] has presented of a causal connection is the temporal proximity between her disclosures and the materially adverse employment actions. But, . . . the only actions that occurred less

---

[4] In *Tuohy*, supra, this Court later expressly adopted the *McDonnell Douglas* framework. 331 Ga. App. at 848-849 (1).

than three months after the disclosures were not materially adverse." *Freeman*, 324

Ga. App. at 432 (1). We then analyzed adverse employment action as follows:

> "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it might well have dissuaded a reasonable employee from making [the statutorily-protected disclosure]." *Cobb v. City of Roswell*, 533 Fed. Appx. 888, 896, 2013 U. S. App. LEXIS 16608 at *18 (11th Cir. 2013) (citing *Burlington Northern & Santa Fe R. Co. v. White*, 548 U. S. 53, 67-68 (126 SCt 2405, 165 LE2d 345) (2006)). The actionable employer conduct must be "significant," rather than "trivial." *Burlington Northern*, 548 U. S. at 67-68. We conclude that a reasonable employee would not have found this conduct — incorrectly warning [the plaintiff] that an employee would be transferred — to be materially adverse. For these reasons, it is immaterial that this warning occurred in the same month in which [the plaintiff] relayed her concerns. . . .

Id. Based upon this language, it is clear that this Court applied the standard established by the United States Supreme Court in *Burlington*, supra, to hold that the plaintiff in *Freeman*, with regard to one of her retaliation claims, had failed to establish an adverse employment action.[5]

---

[5] Judge Goss's special concurrence points to the italicized language in the following quote from *Freeman*, supra, to support its argument that we need not overrule *Freeman*: "[w]e are not required to decide whether the *McDonnell Douglas* framework should be adopted in whistleblower retaliation cases because *under any*

(b) *Standard for Adverse Employment Action in Title VII Retaliation Cases*.

Our application of the *Burlington* standard for adverse employment action in federal

*retaliation* cases to *retaliation* cases under the Georgia Whistleblower Act in

*Freeman*, supra, is understandable at first glance. However, an examination of the

differences between the federal retaliation statute and the Georgia Whistleblower Act,

as well as the United States Supreme Court's rationale in *Burlington*, supra, makes

it clear that we should not have done so.

In *Burlington*, supra, the United States Supreme Court addressed whether the

standard for adverse employment action in employment discrimination cases brought

under the substantive discrimination section of Title VII should apply to retaliation

cases brought under a different section of Title VII. 548 U. S. at 56. It noted a split

in Circuit Courts of Appeal decisions with regard to "whether the challenged action

has to be employment or workplace related *and about how harmful that action must*

*be to constitute retaliation*." (Emphasis supplied.) Id. at 60 (II). At that time, three

Circuit Courts of Appeal "appl[ied] the same standard for retaliation that they

_____

*standard*, [the plaintiff] has not pointed to record evidence that any materially adverse employment action was a matter of retaliation for her whistle-blowing activity." (Emphasis supplied.) 324 Ga. App. at 429 (1). This language, however, clearly refers to the *McDonnell Douglas* burden-shifting framework; it is not a reference to various standards for analyzing adverse employment action.

10

appl[ied] to a substantive discrimination offense, holding that the challenged action must result in an adverse effect on the terms, conditions, or benefits of employment." (Citations and punctuation omitted.) Id.

In answering the question before it, the Supreme Court found the language of the different provisions significant. *Burlington*, 548 U. S. at 61 (II) (A). It quoted the following language from Title VII's core anti-discrimination provision (often referred to as a substantive discrimination claim):

It shall be an unlawful employment practice for an employer

(1) *to fail or refuse to hire or to discharge* any individual, or otherwise to discriminate against any individual *with respect to his compensation, terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way *which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee*, because of such individual's race, color, religion, sex, or national origin. § 2000e-2(a)

(Punctuation omitted; emphasis in original.) Id. at 61-62 (I) (A). It then contrasted this language with the following language contained in the anti-retaliation provision:

11

It shall be an unlawful employment practice for an employer to *discriminate against* any of his employees or applicants for employment because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. § 2000e-3(a).

(Punctuation omitted; emphasis in original.) Id. at 62 (II) (A).

Based upon the different language in the two provisions, the Supreme Court concluded that the phrase "discriminate against" in the anti-retaliation provision of Title VII "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Burlington*, 548 U. S. at 57. See also 42 U. S. C. § 2000e-3 (a). In reaching this conclusion, the Supreme Court explained that with regard to a substantive discrimination case under Title VII, the words "'hire,' 'discharge,' 'compensation, terms, conditions, or privileges of employment,' 'employment opportunities,' and 'status as an employee' – explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." *Burlington*, 458 U. S. at 62 (II) (A). With regard to "the level of seriousness to which harm must rise before it becomes actionable retaliation," id. at 67 (II) (B), the Supreme Court concluded that "a plaintiff must show that a reasonable

12

employee would have found the challenged action materially adverse, which *in this context* means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." (Citation and punctuation omitted; emphasis supplied.) Id. at 68 (II) (B).

After *Burlington* was decided, federal courts have commented "that the Title VII [anti-]retaliation provision protects an employee from a wider range of conduct than the [substantive] discrimination provision does." *Phelan v. Cook County*, 463 F3d 773, 781 (II) (C) (1), n.3 (7th Cir. 2006). See also *Crawford v. Carroll*, 529 F3d 961, 974 (III) (A), n.14 (11th Cir. 2008) (noting that "materially adverse" standard in *Burlington* for retaliation cases is "distinct and different" from the "serious and material change in the terms, conditions or privileges of employment" standard applied to Title VII substantive discrimination claims) (punctuation omitted). The "materially adverse" test for Title VII retaliation cases has also been described as a more "liberal" test for adverse employment action. *Crawford*, 529 F3d at 974 (III) (A). See also *Herron-Williams v. Ala. State Univ.*, 287 FSupp.3d 1299, 1317 (V) (B) (1) (M.D. Ala. 2018). Indeed, the Eleventh Circuit stated that "*Burlington* also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially

adverse' to [her] and thus constitutes adverse employment actions. [Cit.]" *Crawford*, 529 F3d at 973 (III) (A), n.13.

For these reasons, we disagree with Judge Doyle's conclusion in her special concurrence that "[b]oth standards . . . result in the same outcome for both substantive and retaliation claims." Analysis of whether the challenged action would have dissuaded a reasonable worker from making or supporting a charge of discrimination is different from an analysis of whether an employee suffered a serious and material change in the terms, conditions, or privileges of employment. As the Eleventh Circuit recently stated, the standard in retaliation cases under *Burlington* "is now viewed from the perspective of a reasonable employee, when previously courts looked to concrete changes in the employee's status, such as firings, demotions, or withheld pay raises." *Brathwaite v. School Bd. of Broward County*, No. 17-13750, 2019 U.S. App. LEXIS 6108 (IV) (B) (11th Cir. February 28, 2019). Moreover, there would have been no need for the United States Supreme Court to articulate a new standard for retaliation cases in *Burlington* if the standards were essentially the same. Additionally, any overlap in the standards and the same result for both retaliation and substantive discrimination claims in one particular case, as pointed out in Judge Doyle's special concurrence, does not mean that the same result obtains in *every* case.

14

See, e. g., *Killen v. Northwestern Human Svcs.*, No. 06-4100, 2007 U. S. Dist. LEXIS 66602 at \*14, 25-26 (E.D. Pa. September 7, 2007) (finding that placement of employee on administrative leave did not show sufficient adverse employment action for Title VII substantive discrimination claim; application of *Burlington* standard resulted in conclusion that employee did show adverse employment action for her Title VII retaliation claim based upon the same facts).

(c) *The Burlington Standard Should Not Be Applied To The Georgia Whistleblower Act*. Having reviewed the rationale and holding of *Burlington*, we now turn to deciding whether it was appropriate for *Freeman* to apply the more liberal "materially adverse" standard for Title VII retaliation claims to actions brought under the Georgia Whistleblower Act. Although the Georgia Whistleblower Act does not define "adverse employment action," the definition of "retaliate" or "retaliation" makes clear that an "adverse employment action" must be "taken by a public employer against a public employee *in the terms or conditions of employment* for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency." (Emphasis supplied.) OCGA § 45-1-4 (a) (5). As this language more closely tracks the statutory language for a Title VII discrimination claim, as opposed to a Title VII retaliation claim, we conclude that this Court should

15

not have applied the standard from *Burlington* in *Freeman*, supra. We therefore overrule *Freeman* only to the extent that it applied the standard for adverse employment action in Title VII retaliation cases to a Georgia Whistleblower Act case. Specifically, the portion of *Freeman* holding that an employee need only "show that a reasonable employee would have found the challenged action materially adverse, meaning that it might well have dissuaded a reasonable employee from making the statutorily-protected disclosure." (Citations and punctuation omitted.) *Freeman*, 324 Ga. App. at 432 (1).[6]

(d) *Adverse Employment Action Under The Georgia Whistleblower Act.* Having concluded that the standard for Title VII retaliation cases should not have been

---

[6] We disagree with the implication in Judge Doyle's special concurrence that we need not overrule this portion of *Freeman* because it merely applied, rather than adopted, the *Burlington* standard. In our view, application versus adoption is a distinction without a difference. See, e. g., *Diamond v. American Family Corp.*, 186 Ga. App. 681, 684 (1) (368 SE2d 350) (1988) (stating "true reason these opinions should be overruled is that they *applied* the wrong standard of review for liability") (punctuation omitted; emphasis supplied). We are "obligated to continue to rely upon the *older* precedent from [this C]ourt until such time as the older law [is] properly overruled by [this C]ourt or reversed or overruled by [the Supreme Court of Georgia]." *White v. State*, ___ Ga. ___ (3) (Case No. S18G0365, decided February 4, 2019). As *Freeman* applied the *Burlington* standard, application of a more narrow standard in this case, without overruling *Freeman,* would cause confusion for the bench and bar as to which standard should be applied going forward.

16

applied in *Freeman*, we now examine the appropriate standard to be applied to the undefined phrase "adverse employment action" in the Georgia Whistleblower Act. As we have already stated, prohibited retaliation includes "the discharge, suspension, or demotion . . . or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment. . . ." OCGA § 45-1-4 (a) (5). In determining the meaning of this phrase, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (Citation and punctuation omitted.) *White v. State*, ___ Ga. ___ (1) (Case No. S18G0365, decided February 4, 2019).

Here, the phrase appears in a list defining retaliation as "the discharge, suspension, or demotion . . . or any other adverse employment action. . . ." OCGA § 45-1-4 (a) (5). "The legal maxim 'noscitur a sociis' means generally that a word or phrase may be known from its accompanying terms. Under this rule, words of general import, when associated together with other words of more specific import, are limited in a sense analogous to the more specific phrases." (Citation omitted.) *Strickland v. Phillips Petroleum Co.*, 248 Ga. 582, 583 (1) (284 SE2d 271) (1981);

17

Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 195 (2012) (noting that this canon "especially holds that 'words grouped in a list should be given related meanings'") (citation and footnote omitted). Additionally,

> when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis (i.e., of the same kind or class) with the things specifically named, unless, of course, there is something to show that a wider sense was intended.

(Citation and punctuation omitted.) *Center for a Sustainable Coast v. Coastal Marshlands Protection Comm.*, 284 Ga. 736, 737-738 (1) (670 SE2d 429) (2008); see also Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199-213 (2012). Stated somewhat differently:

> Where a statute or other document enumerates several classes of persons or things, and immediately following, and classed with such enumeration, the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that persons or things therein comprised may be read as ejusdem generis with, and not of a quality superior to or different from, those specifically enumerated. This rule is well established in this [S]tate.

(Citation and punctuation omitted.) *Standard Oil Co. v. Swanson*, 121 Ga. 412, 415 (49 SE 262) (1904).

Applying these guides for viewing "the statutory text in the context in which it appears," *City of College Park v. Martin*, 304 Ga. 488, 489 (818 SE2d 620) (2018), leads to the conclusion that the phrase "any other adverse employment action" in OCGA § 45-1-4 (a) (5) should be interpreted to mean employment action analogous to or of a similar kind or class as "discharge, suspension, or demotion." See *Standard Oil Co.*, 121 Ga. at 415 ("words 'other merchandise,' in the act, must be construed to mean other merchandise ejusdem generis with the articles expressly named"). See also *Cape Henry Towers v. Nat. Gypsum Co.*, 229 Va. 596, 603 (331 SE2d 476) (1985) (Virginia Supreme Court refusing to consider statutory language out of context and applying doctrines of ejusdem generis and noscitur a sociis to reject argument that "or any other articles" should be given "limitless effect") (punctuation omitted); *Dunham v. State*, 140 Fla. 754, 757 (192 So. 324) (1939) (holding "occupations specified are those which are governed by the law of bailments and, we believe, that the broader term 'any other person' was meant to refer to one following a like pursuit"); *City of Mankato v. Barber Asphalt Paving Co.*, 142 F. 329, 345 (8th Cir. 1905) ("[t]he general words, 'or any other cause,' by a familiar rule of construction expressed by the maxim noscitur a sociis, do not enlarge the scope of the particular words in the midst of which they appear"); *United States v. Atchison*, 142

19

F. 176, 190-191 (W.D. Mo. 1905) (stating "authorities are all agreed that the general words 'or any other interstate traffic,' used in such connection, on the rule of noscitur a sociis and ejusdem generis, are controlled by the antecedent specification, and are limited to objects 'of like kind with those specified'").[7]

(e) *Adverse Employment Action in Title VII Substantive Discrimination Cases*. Before applying this standard to the facts presently before us, an examination of federal decisions interpreting the meaning of adverse employment action in substantive discrimination cases may provide some guidance. Under that standard, "an employee must show that [s]he suffered a *serious and material* change in the

---

[7] Nothing cited in Judge Goss's special concurrence mandates a different conclusion. Judge Peterson's statement in *Franklin I*, related only to application of the statute of limitation to separate causes of action created by "any discrete adverse employment action." 337 Ga. App. at 297 (2). It offers no insight into the meaning of the phrase "any other adverse employment action."

Our opinion in *Tift County School Dist. v. Martinez*, 331 Ga. App. 423, 428 (1) (771 SE2d 117) (2015), cited in Judge Goss's special concurrence, is also inapposite. In that case, we concluded that the phrase "[a] municipal corporation, a county, or any other political subdivision of this State," found in the second sentence of OCGA § 33-24-51 (b), included school districts for purposes of the waiver of sovereign immunity. Id. We did not hold that the phrase "or any other political subdivision" provided "more inclusive language" than the other terms in the list in which it appeared. Instead, we held that this language was different from and "more inclusive" than a different waiver for "local government entities" contained in the first sentence of OCGA § 33-24-51 (b). Id. As we were not construing the meaning of "any other political subdivision of this State" in the context of the list in which it appeared, our holding in that case has no bearing on the issue now before us.

20

terms, conditions, or privileges of h[er] employment." (Citation and punctuation omitted; emphasis supplied.) *Walker v. Indian River Transp. Co.*, 741 Fed. Appx. 740, 749 (III) (B) (11th Cir. 2018). "Although an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire or demotion, it must meet a 'threshold level of substantiality.' [Cit.]" *Grimsley v. Marshalls of MA, Inc.*, 284 Fed. Appx. 604, 608 (II) (A) (11th Cir. 2008). "The employee's subjective perception of the seriousness of the change is not controlling; rather this issue is viewed objectively from the perspective of a reasonable person in the circumstances."[8] Id. Examples of conduct not found to be adverse employment action include: not allowing a retired police officer to keep his service gun;[9] changing job duties to include local driving;[10] attendance and leave issues;[11] a change in the

---

[8] This standard differs from that applied in Title VII retaliation cases because the materiality of the change does not turn on whether it would have dissuaded a reasonable employee from making the statutorily protected disclosure.

[9] *Cobb v. City of Roswell*, 533 Fed. Appx. 888, 896 (VI) (11th Cir. 2013).

[10] *McCone v. Pitney Bowes*, 582 Fed. Appx. 798, 800 (III) (11th Cir. 2014).

[11] *Stubbs v. Compass Bank*, No. 2:18-cv-00661-RDP, 2018 U. S. Dist. LEXIS 178888 at *7 (III) (A) (N.D. Ala. October 18, 2018).

21

exercise time slot for an employee of the armed service;[12] and the denial of a request for a transfer.[13] "[A] change in an employee's work assignments, if not accompanied by a tangible harm or some unusual circumstance, is generally not sufficient to constitute an adverse employment action." *Williams v. Great-West Healthcare*, No. 1:015-CV-2675-RWS-GGB, 2007 U. S. Dist. LEXIS 102132 at *23 (D) (2) (N.D. Ga. June 8, 2007) (finding no adverse employment action from assignment of more non-medical cases to plaintiff than managers of a different race where plaintiff presented no evidence of financial harm).

(f) *Evidence of Adverse Employment Action in this Case.* We now turn to Franklin's allegations of adverse employment action. To support her claim, in part, she points to the County's decision to remove her job duties of credentialing medical providers and processing credit and debit card receipts and replace them with a duty of processing insurance electronic fund transfers.[14] It is undisputed that Franklin's job

---

[12] Redding v. Fanning, No. 5:14-CV-407 (MTT), 2016 U. S. Dist. LEXIS 159213 at *21 (IV) (B) (2) (M.D. Ga. November 17, 2016).

[13] *Hawkins v. BBVA Compass Bancshares*, 613 Fed. Appx. 831, 836 (III) (A) (11th Cir. 2015).

[14] The question of adverse employment action must be considered separately from the issue of retaliation. For example, even if an employee presents undisputed direct evidence of discrimination, proof that the employee suffered adverse

22

title, salary, and benefits were not changed as a result of her work assignments, and her characterization of her current job duties as "busy work" is the kind of subjective, conclusory allegation that should not be considered when determining whether an adverse employment action has occurred. See *Valero v. San Francisco State Univ.*, No. 12-cv-04744-TEH, 2014 U. S. Dist. LEXIS 47018 at *8-9 (N.D. Cal. November 17, 2014) (refusing to consider plaintiff's conclusory allegation "that her new job is a 'dead-end, busywork job'" when determining whether genuine issue of material fact existed with regard to whether an adverse employment action had occurred). While some of Franklin's work duties may have changed,[15] some remained the same,[16] and the additional work she was given required the same general skill set and aptitude.

employment action must still be shown. See *Grimsley*, 284 Fed. Appx. at 609 (II) (A). Simply put, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." (Citation and punctuation omitted.) *McCone*, 582 Fed. Appx. at 800 (III).

[15] Franklin's credit card duties were replaced with insurance EFT transfers, and she no longer checked the credentials of medical providers. The credentialing work required her to collect data from any licensed medical provider that saw Fulton County patients to submit to various care management organizations or insurers. While Franklin characterized the credentialing and credit card work as her "core" job duties, she provided no evidence about how often or how long it took her to perform them on a daily or weekly basis.

[16] Franklin continued to count and deposit money for the County's treasury department, as well as parking lot proceeds.

23

Additionally, Franklin has made no effort to show how her change in work assignments has had any objectively negative effect on her future employment opportunities. Based upon these undisputed facts and circumstances, Franklin's work assignment changes fail to amount to adverse employment action under OCGA § 45-1-4 (a) (5) as a matter of law. See *Martin v. Locke*, 659 FSupp.2d 140, 148-149 (I) (A) (D.C. Cir. 2009) (plaintiff's complaint that "most of her responsibilities were given to other employees, leaving her with busywork" failed to amount to adverse employment action when she remained at same pay and grade level) (punctuation omitted).[17]

2. *Pretext for Denied Promotions*. As we have already explained, we are assuming, without deciding, that the two denied promotions were adverse employment action. As Franklin does not assert that the trial court erred by

[17] After considering the record regarding Franklin's claims based upon training requests, leave requests, and the last transfer request, we conclude that they did not meet the standard required for adverse employment action under OCGA § 45-1-4 (a) (5) as a matter of law and do not warrant a detailed discussion in this opinion. Moreover, even if we were to consider all of Franklin's claims collectively, her contentions regarding training, leave requests, and change in job duties do not amount to adverse employment action. See *Hyde v. KB Home*, 355 Fed. Appx. 266, 269 (II) (A) (11th Cir. 2009). We cannot consider her claim regarding the denied transfer collectively because she submitted no evidence of a specific transfer opportunity for which she was denied.

24

concluding that the County articulated a legitimate, nondiscriminatory reason for the employment decision, we now evaluate Franklin's assertion on appeal that she has shown pretext under the *McDonnell Douglas* test.

A plaintiff asserting a claim under the Georgia Whistleblower Act establishes pretext

> by a direct showing that a discriminatory reason more likely motivated the defendant or by an indirect showing that the defendant's explanation is not credible. To avoid summary judgment, a plaintiff must present significantly probative evidence on the issue of pretext because the plaintiff has the burden of establishing pretext. A defendant's given reason is not pretextual unless it is shown *both that the reason was false, and that discrimination or retaliation was the real reason*. If the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason, or showing that the decision was based on erroneous facts.

(Footnote omitted; emphasis supplied.) *Harris*, 345 Ga. App. at 378-379 (2) (b).

(a) *Denial of Health Program Administrator Position*. The record shows that Franklin applied for this position on July 3, 2012. On August 8, 2012, a human resources manager sent an email to Franklin stating that the personnel department had forwarded her name because she met the qualifications for the position. On August

20, 2012, a three-person panel interviewed Franklin, as well as seven other candidates for the position. In an affidavit, the Director of the Department of Health and Wellness, a member of the three-person panel, averred that the sole reason Franklin was not selected for the position was that she had received the lowest total interview score of all of the interviewed candidates. She also stated that neither she nor any of her subordinates retaliated against Franklin "for engaging in any form of protected activity." On August 28, 2012, the Director of the Department of Health and Wellness sent an email to Franklin advising: "Even though your background and experience are exceptional, another candidate has been selected for this position. I encourage you to apply for future openings, and wish you much success in your career endeavors."

In an attempt to meet her burden of showing pretext, Franklin asserts that the Director's affidavit "failed to state how the scores of the candidates were determined" and that her "statement about Franklin's scores are hearsay and inadmissible. OCGA §§ 24-8-801, 24-9-901." We disagree. The affidavit states that it is based upon personal knowledge, and it is undisputed that the Director was a member of the three-person panel that interviewed Franklin. The Director's statement about the scores

26

does not meet the definition of hearsay in OCGA § 24-8-801 (c),[18] and Franklin's citation to the portion of the Evidence Code regarding authentication to support her claim is puzzling as it specifically endorses "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." OCGA § 24-9-901 (b) (1). Based upon Franklin's failure to meet her burden to produce evidence of pretext, we affirm this portion of the trial court's grant of summary judgment to the County.

(b) *Denial of Human Services Manager Position*. On December 26, 2012, Franklin applied for this position in the Department of Aging and Youth. The job posting required that the candidate have a

> Bachelor's Degree in Social Work, Human Services, Vocational Rehabilitation, Behavioral Science or Social Science, Business or Public Administration, or a related field and six (6) years of progressively responsible experience managing community or social service programs, including three (3) years of program planning responsibility and three (3) years of supervisory experience; or a year for interchange of indicated education and experience equal to the minimum qualifications.

---

[18] This Code section provides: "'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

On January 25, 2013, the Fulton County Recruiting Division notified Franklin as follows: "We regret to inform you that after careful review of your application and/or resume for the position of Human Services Program Manager, we have found that you do not meet the minimum qualifications at this time." The personnel manager who made "recommendations to deny or advance applications for further consideration beyond the Personnel Department" averred in her affidavit that "Franklin did not possess the requisite number of years of community, social service, and planning experience."

In support of her claim that the County's contention regarding her lack of minimum job qualifications was pretextual, Franklin submitted an affidavit in which she concluded that she "met the qualifications for this position" and attached the job announcement and her application and resume as exhibits, but provided no explanation of how she possessed the necessary qualifications. Based upon our review of the job announcement and Franklin's qualifications, we cannot say that she met her burden to produce evidence showing that the stated reason she was not

considered for the job was false.[19] We therefore affirm this portion of the trial court's grant of summary judgment to the County.

3. Based upon our holding in Divisions 1 and 2, we need not address Franklin's remaining enumerations of error in order to affirm the trial court's order granting summary judgment in favor of the County. We therefore decline to address her remaining claims of error as they are moot.

*Judgment affirmed. Dillard, C.J., Miller, P.J., McMillian, Rickman, Mercier, Reese, Gobeil, Coomer, and Hodges, JJ., concur. Doyle, P.J., concurs fully in Divisions 2 and 3, and in judgment only in Division 1. Barnes, P.J., McFadden, P.J., and Goss, J., concur in judgment only. Markle, J., disqualified.*

---

[19] The conclusory statement in her affidavit, standing alone, is insufficient to create a genuine issue of material fact on the issue of pretext. See *Mullis v. Welch*, 346 Ga. App. 795, 798 (2) (815 SE2d 282) (2018) ("Conclusory statements in affidavits unsupported by factual evidence are insufficient to avoid summary judgment.") (punctuation omitted).

A18A1724. FRANKLIN v. PITTS.

DOYLE, Presiding Judge, concurring specially.

I agree that the trial court did not err when it granted summary judgment to the defendant on the plaintiff's retaliation claims under the Georgia Whistleblower Act ("GWA"). I do not agree, however, that we need to overrule our decision in *Freeman v. Smith*,[1] nor do I agree that the standard the majority proposes to adopt is appropriate based on the plain language of our statute. Therefore, I concur only in the judgment in Division 1. I concur fully in Divisions 2 and 3.

---

[1] 324 Ga. App. 426 (750 SE2d 739) (2013).

The GWA precludes a public employer from retaliating against a public employee for disclosing "a violation of or noncompliance with[,inter alia,] a law," or, to paraphrase, for "refusing to participate" in an act, policy, or practice of the employer that the employee reasonably believes to be a violation of the law.[2] Under OCGA § 45-1-4,

> "[r]etaliate" or "retaliation" refers to the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

In *Freeman*, this Court applied (without formally adopting) the standard used by federal courts when attempting to discern whether the alleged act of retaliation constituted "adverse employment action" for purposes of a federal retaliation claim — whether "a reasonable employee would have found the challenged action materially adverse, meaning that it might well have dissuaded a reasonable employee from making the" disclosure.[3] The majority instead argues that this Court should

---

[2] OCGA § 45-1-4 (d) (2) and (3).

[3] *Freeman*, 324 Ga. App. at 432 (1).

2

apply the "adverse employment action" standard applied in substantive Title VII claims — whether the employee suffered a "serious and material change in the terms, conditions, or privileges of h[er] employment."[4]

The majority makes too much of the distinction between the standard applied to "adverse employment actions" under substantive Title VII claims and the standard applied to "adverse employment actions" under federal retaliation claims. I do not believe the distinction is as substantial as the majority urges. Both standards are objective, reasonable person standards, and both require that the employer's alleged retaliation be material; in other words, the standards largely overlap and result in the same outcome for both substantive and retaliation claims.[5] Our retaliation statute does not track perfectly either the language of Title VII's substantive claims or the language of Title VII's retaliation claims. And implicit in *Freeman's* application of the Title VII retaliation "adverse employment action" standard is the plain language

---

[4] (Punctuation omitted.) *Crawford v. Carroll*, 529 F3d 961, 974 n.14 (11th Cir. 2008).

[5] See *Ambus v. AutoZoners, LLC*, 71 FSupp.3d 1280, 1302 (V) (3) (Ala. M.D. 2014). See also *Walker v. Indian River Transp. Co.*, No. 17-10501 (B) (11th Cir. July 27, 2018) (reviewing discrimination and retaliation claims and concluding that only one claim constituted an adverse employment action and met both the retaliation and discrimination standards).

3

of our statute, which limits the universe of conduct to which an employer's alleged retaliatory action must apply.

I believe the cumulative application of the federal retaliation "adverse employment action" standard within the lens of the plain language of the GWA provides a workable standard. In any event, the plaintiff's claims fail under the standards suggested by both the majority and Judge Goss's special concurrence.

A18A1724.  FRANKLIN v. PITTS.

GOSS, Judge, concurring specially.

I agree that the trial court did not err when it granted summary judgment in favor of Commissioner Pitts on Dedrain Franklin's retaliation claim under the Georgia Whistleblower Act. I do not agree, however, that we need to overrule our decision in *Freeman v. Smith*, 324 Ga. App. 426 (750 SE2d 739) (2013), as we affirm the trial court's correct and well-written order.

The relevant provision of the Whistleblower Act, OCGA § 45-1-4 (a) (5), defines prohibited retaliation as including "the discharge, suspension, or demotion by a public employer of a public employee or *any other adverse employment action*

taken by a public employer against a public employee in the terms or conditions of employment" for disclosing a violation of law, rule, or regulation to a supervisor or agency. Applying a rule of interpretation which construes a word or phrase in accordance with its accompanying terms, the majority interprets the statutory phrase "any other adverse employment action" as "employment analogous to or of a similar kind or class as discharge, suspension, or demotion." (Op. p. 17.) We should first attempt to read the statute in accordance with its plain and ordinary meaning, however. See *Deal v. Coleman*, 294 Ga. 170, 173 (751 SE2d 337) (2013) ("if a statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.") (punctuation omitted).

Nothing in the text of OCGA § 45-1-5 (a) (5) suggests that an employer's "any other adverse employment action" against the whistleblower must be as serious as a discharge, suspension, or demotion. If the General Assembly had so intended, it could easily have done so by using terms such as "any *similarly* adverse employment action" or "any other adverse employment action *with a similar level of seriousness or gravity*." Instead, the legislature used the broad phrase "any other adverse employment action," which I read as potentially including adverse actions *not necessarily* as serious as discharge, suspension, or demotion. See *Franklin v. Eaves*,

2

337 Ga. App. 292, 297 (787 SE2d 265) (2016) (Peterson, J.) (the Act's definition of "retaliation" "indicat[es] that *any discrete adverse employment action* can create a cause of action") (emphasis supplied); *Tift County School Dist. v. Martinez*, 331 Ga. App. 423, 428 (1) (771 SE2d 117) (2015) (courts were required to read the statutory phrase "any other political subdivision" as "more inclusive" than the more narrowly defined category of "local government entities," such that a school district had waived its sovereign immunity to the extent it purchased insurance).

I also do not agree that we must overrule our decision in *Freeman*. We began our analysis in that case with the observation that "not all" courts facing the question have applied the so-called *McDonnell-Douglas* burden-shifting framework[1] to Georgia whistleblower retaliation claims. 324 Ga. App. at 429 (1). We specifically noted, however, that we were "not required to decide whether the *McDonnell-Douglas* framework should be adopted in whistleblower cases because, *under any standard*, [the *Freeman* plaintiff] ha[d] not pointed to record evidence that any

---

[1] See *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802-803 (II) (93 SCt 1817, 36 LE2d 668) (1973); *Tuohy v. City of Atlanta*, 331 Ga. App. 846, 848-850 (1) (771 SE2d 501) (2015). Our decision in *Tuohy* cited *Freeman* without overruling it, perhaps because *Freeman* specifically avoided the framework question. 331 Ga. App. at 849 (1).

3

materially adverse employment action was a matter of retaliation for her whistle-blowing activity." Id. at 430 (1) (emphasis supplied).

We also cited law including *Burlington Northern & Santa Fe R. Co. v. White*, 548 U. S. 53 (126 SCt 2405, 165 LE2d 345) (2006), that "[t]he actionable employer conduct must be 'significant' rather than 'trivial.'" *Freeman*, 324 Ga. App. at 432 (1); *Grimsley v. Marshalls of MA, Inc.*, 284 Fed. Appx. 604, 608 (II) (A) (11th Cir. 2008) ("Although an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire, or demotion, it must meet a threshold level of substantiality") (citations and punctuation omitted). In short, an employee's allegations of an "adverse employment action" under the Whistleblower Act are properly evaluated for their objective materiality – that is, whether "'a reasonable employee would have found the challenged action materially adverse, meaning that it might well have dissuaded a reasonable employee from making the statutorily protected disclosure.'" *Freeman*, 324 Ga. App. at 432 (1), quoting *Cobb v. City of Roswell*, 533 Fed. Appx. 888, 896 (11th Cir. 2013); see also *Burlington Northern & Santa Fe R. Co.*, 548 U. S. at 67-68 ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this

4

context means it well might have dissuaded a reasonable worker from making or supporting a charge" of retaliation) (citation and punctuation omitted).

Because *Freeman* correctly stated existing law on the proper standard to be applied to a plaintiff's retaliation claims under the Georgia Whistleblower Act, I see no need to overrule that decision. I therefore concur only in the judgment. I am authorized to state that Presiding Judge Barnes and Presiding Judge McFadden join in this special concurrence.