**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 23, 2020**

# In the Court of Appeals of Georgia

A20A0049, A20A0308. MAINE v. GEORGIA DEPARTMENT OF CORRECTIONS; and vice versa.

MCFADDEN, Chief Judge.

These appeals arise from Sherman Maine's action against his former employer, the Georgia Department of Corrections (the Department), for retaliation in violation of the Georgia Whistleblower Act, OCGA § 45-1-4. After a jury found in Maine's favor on the issue of liability, the trial court granted the Department's motion for judgment notwithstanding the verdict (JNOV). Maine challenges that ruling in Case No. A20A0049. The trial court also conditionally denied the Department's alternative motion for new trial. The Department challenges that ruling in Case No. A20A0308.

Maine, formerly a captain in a state prison, claims that the Department retaliated against him for disclosing and objecting to a confidential operation in the

prison that required Maine to provide an inmate with cell phones without his warden's written authorization. He argues that the lack of written authorization for the operation violated a regulation requiring Department personnel to adhere to policies published by the Department. The jury found that Maine objected to this alleged violation at the time of the operation and later disclosed the alleged violation in a letter to the Department's Commissioner, and that the Department fired Maine in retaliation for these actions. But, as detailed below, even when we view the trial evidence most favorably to Maine, that evidence showed that the only person aware of Maine's objection about the lack of written authorization was his warden, who was no longer employed at the prison when Maine was fired and who did not have a role or input in the decision to fire him. And although Maine discussed the confidential operation in his letter to the Commissioner, he did not disclose the aspect of the operation that he contends was unlawful — the lack of written authorization. For these reasons, the trial evidence viewed most favorably to Maine did not show that the Department fired Maine in retaliation for protected objections or disclosures, and the trial court did not err in granting the Department's motion for JNOV on Maine's whistleblower claim. So we affirm the judgment in Case No. A20A0049.

Given our conclusion that the trial court properly granted a JNOV to the Department, we need not reach the issues raised in the Department's cross-appeal from the alternative ruling denying its motion for new trial. So we dismiss Case No. A20A0308 as moot. Finally, we deny as moot Maine's motion to dismiss the Department's cross-appeal as being untimely filed.

1. *Facts.*

Our resolution of these appeals rests on our review of the trial court's grant of the JNOV to the Department. In reviewing that ruling, we must consider "whether the evidence, with all reasonable deductions therefrom, demanded a verdict contrary to that returned by the factfinder. If there is any evidence to support the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is error to grant the motion." *Mosley v. Warnock*, 282 Ga. 488 (1) (651 SE2d 696) (2007) (citations and punctuation omitted). We acknowledge that much of the trial evidence in this case was strongly disputed. On many points Maine and his witnesses told a completely different story than the Department's witnesses. Where such stark conflicts in witness testimony occur, we must, consistent with our standard of review, accept the version of the story that favors Maine.

So viewed, the trial evidence showed that in 2014 the Department fired Maine from his position as a captain at the Valdosta State Prison because, four years earlier, Maine had provided several cell phones to an inmate at the prison who was working as a confidential informant (CI) as part of a confidential operation run by the Department. In the fall of 2010, Maine had been ordered to give the phones to the CI by the then-warden of the prison and by at least one Department investigator. In a meeting with the warden and several Department investigators, Maine had voiced general objections about the confidential operation, emphasizing the safety risks that the operation posed to the CI. In separate conversations with the warden he voiced a more specific objection that he did not have written authorization to give the CI the cell phones. He repeatedly asked the warden for written authorization, but the warden refused to provide it to him. The confidential operation ended several months later, when the CI was transferred out of the prison after being badly injured in an attack by other inmates.

Subsequently, Maine became the subject of a criminal investigation conducted by the Federal Bureau of Investigation with the assistance of investigators from the Department. The FBI investigation primarily focused on other activities that Maine disputed at trial.

4

In October 2012, the prison had a new warden who, on the recommendation of a superior in the Department, suspended Maine with pay pending an "internal investigation." At that time Maine had no knowledge of the investigation and did not understand why he was being investigated.

Shortly after being suspended, Maine sent a letter to the Commissioner of the Department complaining that he was being treated unfairly and asking for an explanation of and help in resolving his suspension. Among other things, he described in that letter the 2010 confidential operation and stated that he had given the CI cell phones at the instruction of the former warden and several Department investigators. But Maine did not mention in the letter either the lack of written authorization for the operation or his objections to the warden on that ground.

In the fall of 2013, the Department began an administrative investigation of Maine that overlapped with the ongoing FBI investigation in some respects but also addressed Maine's statement that he had provided an inmate with cell phones. The person leading that investigation interviewed Maine, the former warden, and the other Department investigators involved in the 2010 confidential operation, among other people. Maine reiterated his assertion that he had been instructed to provide the cell phones as part of the operation, but he did not mention his request that the

5

authorization be put into writing or the former warden's failure to do so. The others involved in the 2010 operation, including the former warden, denied in their interviews that the operation involved providing the CI with cell phones or that they had instructed Maine to do so. As a result, the investigative case file contained no reference at all to written authorization or any objection by Maine to the lack thereof.

Several persons in the Department reviewed the investigative case file, including the Department's general counsel, who recommended to the prison's warden that Maine be fired for giving cell phones to an inmate. In his written recommendation, the general counsel acknowledged Maine's assertion that he had been instructed to do so, but he concluded that the evidence did not corroborate that assertion. By that time, the prison had yet another warden, who fired Maine on August 22, 2014, based on the general counsel's recommendation. The warden told Maine he was being fired for giving the CI cell phones.

2. *Maine's claim under the Georgia Whistleblower Act.*

Maine brought a claim against the Department under the Georgia Whistleblower Act, OCGA § 45-1-4, which "creates a cause of action for retaliatory discharge, suspension, demotion, or other adverse employment action taken against a public employee . . . by a public employer as a result of the employee's disclosure

of, or refusal to participate in, violation of the law[, a rule, or a regulation]." *West v. City of Albany*, 300 Ga. 743 (797 SE2d 809) (2017) (footnotes omitted). Under the Act, a public employer such as the Department may not "retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule or regulation to either a supervisor or government agency," OCGA § 45-1-4 (d) (2), or "retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." OCGA § 45-1-4 (d) (3). See *Colon v. Fulton County*, 294 Ga. 93, 97 (2) (751 SE2d 307) (2013). To prevail on his retaliation claim, Maine was required to "establish that (1) [he] was employed by a public employer; (2) [he] made a protected disclosure or objection; (3) [he] suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action." *Franklin v. Pitts*, 349 Ga. App. 544, 547 (826 SE2d 427) (2019) (citation and punctuation omitted).

There is no question that the trial evidence showed Maine was employed by a public employer and suffered an adverse employment action, two of the four elements of his cause of action. Instead, our review of the grant of a JNOV turns on whether

7

Maine's objections to the confidential operation in 2010 or his letter to the Commissioner in 2012 concerned a violation of a law, rule, or regulation, and whether either of these activities were causally connected with his 2014 firing.

(a) *Alleged violation of a law, rule, or regulation.*

We must first identify the law, rule, or regulation that Maine contends was violated in this case. In his appellate briefs, Maine points to the warden's failure to authorize in writing the requirement that he provide cell phones to the CI as a part of the confidential operation. Maine asserts that an internal Department policy required such written authorization and that the failure to adhere to this Department policy in turn violated a regulation providing that "[a]ll [Department] personnel shall be required to adhere to applicable rules, regulations, policies, procedures and directives published by the Department of Corrections and local implementing procedures promulgated in consonance therewith." Ga. Comp. R. & Regs. r. 125-2-1-.01 (d). Both Maine and the Department take the position (so we assume without deciding)[1] that a warden *could* authorize a confidential operation that included providing cell

---

[1] We do not address whether Maine and the Department are correct in this position, which apparently is based on a reading of OCGA § 42-5-18 (b), because Maine did not base his retaliation claim on an assertion that the warden lacked authority to authorize the operation.

phones to an inmate. It is only the lack of written authorization that, according to Maine, caused the confidential operation in this case to violate a law, rule, or regulation.

In granting the JNOV, the trial court concluded that the failure to adhere to the Department's policy requiring written authorization was not a violation of a law, rule, or regulation. But for purposes of these appeals we will assume, without deciding, that the lack of written authorization of the cell phone component of the confidential operation *did* violate a law, rule, or regulation. Even so, the Department was entitled to a JNOV because, as detailed below, there was not evidence showing that the Department fired him in retaliation for objecting to or disclosing that violation. See *Looney v. M-Squared*, 262 Ga. App. 499, 505 (6) n. 18 (586 SE2d 44) (2003) (judgment entered pursuant to granting of directed verdict may be affirmed if right for any reason, even though trial court did not rule on that basis). See generally *City of Gainesville v. Dodd*, 275 Ga. 834, 835-839 (573 SE2d 369) (2002) (discussing appellate court's authority to affirm rulings under right-for-any-reason doctrine).

(b) *Objections to confidential operation in 2010*.

There was evidence at trial that, during the course of the confidential operation in the fall of 2010, Maine made repeated objections to the then-warden of the prison

9

about the lack of written authorization for him to give the CI cell phones. And, as explained above, we are assuming for the purposes of these appeals that those objections were protected conduct because they concerned a violation of a law, rule, or regulation. But to show the necessary causal connection for a retaliation claim under the Whistleblower Act there must also be

> evidence *linking* [the objections about the lack of written authorization] to the adverse-employment action taken against [Maine, his termination]. A plaintiff can establish such a causal connection by showing that the decision-maker was aware of the protected disclosure [or objection] and that the disclosure [or objection] were not wholly unrelated.

*Forrester v. Ga. Dept. of Human Svcs.*, 308 Ga. App. 716, 726 (1) (a) (iv) (708 SE2d 660) (2011) (citations omitted; emphasis in original).

In this case there was no trial evidence, either direct or circumstantial, connecting Maine's objections about the lack of written authorization with his termination four years later. During the course of the confidential operation in 2010, the only person to whom Maine objected about the lack of written authorization was his warden. Maine testified at trial that he did *not* tell the Department investigators involved in the 2010 confidential operation that it was against policy. And it is

10

undisputed that the warden was not a decision-maker in Maine's termination. By that time, the warden was no longer working at the prison and no trial evidence suggested that he had any role or input in the decision to terminate Maine.

There is also no evidence that any of the persons who *were* involved in Maine's termination knew about the objections he had raised to the warden. The trial evidence showed that those persons based the decision to fire Maine on information gleaned in the investigation; no trial evidence indicated that the decision-makers had any other source of information. Neither the investigative case file (including Maine's statement and interview summary) nor the general counsel's recommendation that the warden fire Maine mentioned Maine's objection to the lack of written authorization regarding cell phones. There is no trial evidence that Maine told anyone in either the administrative investigation or the FBI investigation about his objection to the lack of written authorization.

Our standard of review requires us to assume that the statements made in the investigation by the former warden and others — that they had not instructed Maine to provide cell phones to the CI — were untruthful. But our standard of review does not require or authorize us to conclude that the persons who conducted that investigation or reviewed the investigative file *knew* of those witnesses'

11

untruthfulness. Mere speculation about whether the decision-makers were aware of Maine's objection to the lack of written authorization cannot support his retaliation claim. Cf. *Murray v. Community Health Systems Professional Corp.*, 345 Ga. App. 279, 285 (1) (a) (811 SE2d 531) (2018) (in retaliation claim brought under Georgia False Medicaid Claims Act, "[plaintiff's] mere speculation about what [another person] said to [decision-maker] is insufficient to establish or even raise a question of fact as to whether [decision-maker] was aware of [plaintiff's] complaint").

(c) *Letter to Commissioner in 2012.*

As Maine conceded at trial, the letter he sent to the Department's Commissioner in late 2012 did not state that the confidential operation failed to adhere to the policy requiring written authorization. His letter did not mention a lack of written authorization at all. The only section of that letter addressing the 2010 confidential operation stated:

> I have heard rumors . . . that I was involved in giving cell phones to inmates. Sir, I have never given anything to an inmate that I was not instructed to by my supervisors. I did give 7 cell phones to an inmate because I was instructed to do so by [the then-warden and two investigators]. I was also instructed to give this inmate tobacco and store goods to make him look like a "big time player" to give him credibility to entrap "dirty staff members". I protested against this but followed the

12

instructions of my superiors. I warned the above-mentioned staff if the other inmates found out about [the CI] being a "plant" that they would kill him; it did not stop them from continuing with their plan. [The CI] was stabbed 9 times when the other inmates discovered that he was an informant from [another prison].

Consequently, on its face, the letter does not disclose a violation of a law, rule, or regulation. For this reason, it is not evident that "the decision-maker was aware of [a] protected disclosure[.]" *Forrester*, 308 Ga. App. at 726 (1) (a) (iv).

(d) *Summary.*

Without question, a jury could find from the trial evidence that Maine's superiors unfairly used him as the scapegoat for an ill-advised confidential operation. But to recover under the Georgia Whistleblower Act, Maine must show that the Department retaliated against him for his alleged disclosure of or objection to a violation of a law, rule, or regulation, and the evidence in this case simply did not link Maine's termination to a disclosure of or objection to the violation upon which he bases his claim — the lack of written authorization for Maine to give the CI cell phones. For that reason, the trial court did not err in granting the Department's motion for JNOV.

3. *The Department's cross-appeal.*

13

In his order granting the JNOV, the trial court also made an alternative ruling denying the Department's motion for new trial. (Our Civil Practice Act authorizes this alternative procedure at OCGA § 9-11-50.) The Department filed a cross-appeal challenging this alternative ruling, and Maine filed a motion to dismiss that cross-appeal for untimeliness.

Given our judgment affirming the grant of a JNOV to the Department, we dismiss as moot the cross-appeal and we deny as moot Maine's motion to dismiss.

*Judgment affirmed in Case No A20A0049. Appeal dismissed in Case No. A20A0308. Doyle, P. J., and Hodges, J., concur.*